IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
SENIOR JUDGE WALKER D. MILLER

Civil Action No. 08-cv-00091-WDM-CBS

WAYNE WATSON and
MARY WATSON,

    Plaintiffs,

v.

DILLON COMPANIES, INC., d/b/a/ KING SOOPERS, also d/b/a INTER-AMERICAN
PRODUCTS, INC., et al.,

    Defendants.

---

## ORDER ON MOTION TO DISMISS

Miller, J.

This matter is before me on the Motion to Dismiss (doc no 36) filed by Defendant FONA International, Inc., f/k/a Flavors of North America, Inc. ("FONA"). FONA seeks dismissal of Plaintiff's Third Amended Complaint on the grounds that it lacks sufficient minimum contacts with the state of Colorado and, therefore, personal jurisdiction does not exist. The motion is opposed by Plaintiffs and by Defendants Gilster-Mary Lee Corporation and Birds Eye Foods, Inc. After review of the parties' written arguments and tendered evidence, I conclude oral argument is not required. For the reasons that follow, the motion will be denied without prejudice.

### Background

Plaintiffs Wayne and Mary Watson are residents of Colorado. This personal injury lawsuit is based on Wayne Watson's serious and permanent lung illness allegedly

resulting from exposure to butter flavoring products contained in microwave popcorn. According to the Third Amended Complaint (doc no 18), Wayne Watson purchased and consumed microwave popcorn sold under the label "Kroger" and "First Choice" from the King Soopers grocery store in Centennial, Colorado from 2001 to 2007. Plaintiffs allege that during this time period, the popcorn was made by Defendants Agrilink/Birds Eye and by Defendant Gilster-Mary Lee for Defendant Kroger Co. Specifically, Birds Eye owned a plant in Ridgeway, Illinois in which microwave popcorn was made and sold to Kroger for distribution. Around 2003, Birds Eye sold the Ridgeway plant to Gilster-Mary Lee. Gilster-Mary Lee was supplied with its flavorings for the Kroger/First Choice popcorn by a number of suppliers, including Defendant Flavor Concepts, Inc. Plaintiffs allege that FONA in turn supplied ingredients to Flavor Concepts. The key ingredient allegedly causing Wayne Watson's lung condition is diacetyl, which was supplied by FONA.

According to the Third Amended Complaint, Gilster-Mary Lee is a Missouri corporation. Kroger is an Ohio corporation. Dillon Companies, Inc., d/b/a King Soopers is a Kansas corporation. Flavor Concepts is an Illinois corporation principally located in Chicago, Illinois. FONA is also incorporated and located in Illinois. FONA presents evidence in the form of an affidavit demonstrating that it is not registered to do business in Colorado, does not maintain a registered agent for service of process in Colorado, does not hold itself out as licensed to conduct business in Colorado, does not own or lease property, and does not maintain bank accounts in Colorado. Declaration of Terry Emmel, Ex. A to Motion to Dismiss (doc no 37-2) at ¶¶ 4-7. In addition, FONA presents evidence that it has not disseminated advertising or marketing materials targeting

2

Colorado. *Id.* at ¶¶ 9-10. It concedes, however, that it has two Colorado customers, whose total annual sales average approximately $11,000, or 1% of its business. *Id.* at ¶ 15.

## Standard of Review

In determining whether the exercise of personal jurisdiction over an out-of-state defendant is appropriate, federal courts undertake two inquiries: whether there is a basis for jurisdiction under the forum state's long-arm statute and whether the exercise of that jurisdiction comports with principles of federal due process. *Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 455 (10th Cir. 1996). Because Colorado's long-arm statute reaches "to the fullest extent permitted by the due process clause of the fourteenth amendment to the United States Constitution," *Safari Outfitters, Inc. v. Superior Court,* 167 Colo. 456, 459, 448 P.2d 783, 784 (1968), the only issue before me is whether exercising personal jurisdiction over FONA in this case is consistent with federal due process. *Kuenzle*, 102 F.3d at 455.

Whether the exercise of personal jurisdiction comports with due process is determined under federal law. *SGI Air Holdings II LLC v. Novartis Int'l AG*, 239 F. Supp. 2d 1161, 1163 (D. Colo. 2003). To comport with due process, the plaintiff must show that the defendant has had adequate minimum contacts with the forum state and that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Id.* (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945)).

Personal jurisdiction over defendants may be either general or specific. General jurisdiction exists when the defendant's contacts with the forum state are so "continuous and systematic" that jurisdiction is appropriate even when the claims are unrelated to

3

the defendant's contacts with the forum state. *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1533 (10th Cir. 1996). In contrast, specific jurisdiction exists when the defendant has "purposely directed" activities at residents of the forum and the litigation results from alleged injuries arising out of or relating to those activities. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985).

Once the requisite minimum contacts are established, I must still determine whether exercising personal jurisdiction would offend traditional notions of fair play and substantial justice, based on the circumstances of the case. *AST Sports Science, Inc. v. CLF Distrib. Ltd.,* 514 F.3d 1054, 1061 (10th Cir. 2008). Factors I must consider in this analysis include: (1) the burden on the defendant; (2) the forum state's interest in resolving the dispute; (3) the plaintiff's interest in receiving convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Id.*

Plaintiffs bear the burden of establishing personal jurisdiction over the foreign defendants. *Behagen v. Amateur Basketball Ass'n of U.S.A.*, 744 F.2d 731, 733 (10th Cir. 1984). However, when the issue is raised before trial and decided on the basis of affidavits and other written materials, the plaintiff's burden is "light;" the plaintiff need only make a prima facie showing and all reasonable inferences must be drawn in the plaintiff's favor. *Id.*; *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Kozeny*, 115 F. Supp. 2d 1231, 1236 (D. Colo. 2000).

## Discussion

FONA argues that it lacks significant contacts with Colorado, having neither

continuous and systematic general business contacts sufficient to give rise to general jurisdiction nor contacts amounting to "purposely directed" activities for specific jurisdiction. The parties do not appear to dispute that FONA's business activities have not been of a character that would give rise to general personal jurisdiction. Accordingly, I examine whether the activities relating to the manufacture of the Kroger/First Choice popcorn amounts to purposeful direction to Colorado.

FONA argues that its "sole link with Colorado stems from the unilateral activity of Flavor Concepts, which allegedly supplied flavoring to [Gilster-Mary Lee] that went into the subject microwave popcorn products that Plaintiffs purchased . . . ." Memorandum in Support of Motion to Dismiss (doc no 37) at 10. In the alternative, FONA argues that Plaintiffs' claims, design defect and failure to warn, do not "arise from" FONA's activities because it did not design or manufacture the popcorn.

Plaintiffs and Gilster-Mary Lee argue that FONA knew its butter flavoring was being sold to Kroger, a nationwide grocery store chain, and would be distributed across the country, including in Colorado. As evidence, they offer affidavit evidence from the Vice President of Gilster-Mary Lee, who testifies: "During the course of Gilster-Mary Lee's acquisition of certain of Agrilink's assets, I recall discussions with FONA that Gilster-Mary Lee would be taking over Agrilink's production of microwave popcorn for The Kroger Co., and that as a result, Gilster-Mary Lee would like to continue using the same flavorings that Agrilink had used in its production of The Kroger Co.'s microwave popcorn."[1] Affidavit of Tom Welge, Ex. A to Plaintiffs' Memorandum in Opposition (doc

---

[1] In its reply brief, FONA argues that this is not competent evidence for me to consider, but I disagree. Mr. Welge's statement appears to be based on personal

no 90-2) at ¶ 9.  In addition, Mr. Welge speculates that since Kroger's business with Agrilink represented over 80% of Agrilink's microwave popcorn, FONA had to be aware that this large percentage of business would transition to Gilster-Mary Lee.  *Id.* at ¶ 10.  FONA's representative testified that FONA makes butter flavors specifically for companies that make microwave popcorn for sale in grocery stores to consumers.  Deposition of Terry Emmel, Ex. C to Plaintiffs' Memorandum in Opposition (doc no 90-4) at 8:1-15.

Plaintiffs cite *Alliance Clothing Ltd. v. District Court for the City and County of Denver*, 532 P.2d 351 (Colo. 1975) to argue that this knowledge is sufficient to establish personal jurisdiction.  I disagree that *Alliance* is controlling here, as it rests in large part on the idea that a foreign manufacturing company can be subject to Colorado jurisdiction if it could reasonably foresee use of its product in the state.  The United States Supreme Court, however, made clear in *World-Wide Volkswagen Corp. v. Woodsen* that foreseeability is not the proper standard.  444 U.S. 286, 296 (1980).  *See also Fleet Leasing, Inc. v. District Court*, 649 P.2d 1074, 1081-82 (Colo. 1982) (citing *World Wide Volkswagen* for the proposition that "foreseeability alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause").

The Supreme Court's most recent examination of the question of whether a manufacturer's placement of a product into the "stream of commerce," resulting in contacts with the state, justifies the exercise jurisdiction is *Asahi Metal Indus. Co. v.*

---

knowledge.  Although it is somewhat lacking in specifics, it is not wholly conclusory and provides some facts from which I can conclude that there were discussions regarding the purpose for which FONA's products would be used after Gilster-Mary Lee's acquisition of the Ridgeway, Illinois plant.

*Superior Court of California*, 480 U.S. 102 (1987). Writing for the plurality, Justice O'Connor notes that minimum contacts must be based on "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." 480 U.S. at 109 (citation omitted). Thus, "a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the act of placing the product into the stream into an act purposefully directed toward the forum state." *Id.* at 112. Rather, additional conduct of the defendant "may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." *Id.* In support of its position, the *Asahi* plurality noted that when a corporation purposefully avails itself of the privilege of conducting activities in the forum state, the corporation has

> clear notice that it is subject to suit there, and can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to customers, or, if the risks are too great, severing its connection with the State. Hence if the sale of a product ... is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States ...

480 U.S. at 110 (citations and internal quotation marks omitted).

The concurring opinion, however, notes that "[t]he stream of commerce refers not to unpredictable current or eddies, but to the regular and anticipated flow of products

7

from manufacture to distribution to retail sale. As long as a participant in this process is aware that the final product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a surprise." 480 U.S. at 117 (Brennan, J., concurring).

The Tenth Circuit has not addressed the disparities in the *Asahi* opinions to guide my decision here. *See generally Commissariat A L'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 395 F.3d 1315, 1321-22 & n. 7 (Fed.Cir.2005) (noting the differing standards and circuit split on whether Justice O'Connor's more rigorous approach or the more lenient standard of Justice Brennan should apply in cases involving the manufacturer of a component of a final product). Similarly, only one Colorado case has addressed the stream of commerce formulation of *Asahi*, but with little analysis. *Union Pacific Railroad Co. v. Equitas, Ltd.,* 987 P.2d 954, 957 (Colo. App. 1999) ("The placement of a product into the stream of commerce, without more, is insufficient to establish defendant's minimum contacts with the forum state.") (citing *Asahi*). I conclude, however, that even applying a test requiring "something more" (sometimes referred to as "stream of commerce plus" standard), the exercise of jurisdiction is appropriate here.

The fact that the ingredients supplied by FONA were specifically designed for flavoring microwave popcorn, a product sold to consumer end users, coupled with notice that Gilster-Mary Lee was manufacturing its popcorn for Kroger, a national grocery store chain, provides the additional conduct that indicates an intent or purpose to serve the market in Colorado and in any other state that Kroger distributes its private label popcorn. I am guided to this conclusion in part by an example of purposeful action that would presumably meet Justice O'Connor's more stringent test, the case of

8

*Rockwell Int'l Corp. v. Costruzioni Aeronautiche Giovanni Agusta*, 553 F.Supp. 328 (E.D.Pa.1982), which is cited in the O'Connor opinion. *Asahi*, 480 U.S. at 113. In that case, the trial court considered whether it had personal jurisdiction over SNFA, a French manufacturer of ball bearings. The ball bearings and assemblies were custom made and used exclusively in the A-109 helicopter manufactured by an Italian company, Agusta. Agusta sold its helicopters in the United States through a single distributor. "SNFA worked closely with Agusta engineers and was aware that the A-109 helicopter was targeted for the executive corporate transport market in the United States and Europe." *Rockwell*, 553 F. Supp. at 330. The district court concluded that specific jurisdiction was appropriate because SNFA had decided to enter and exploit the international executive transport market, worked closely with Agusta's engineers to develop bearings for the helicopters knowing that the helicopters would be distributed in the United States (and other countries), and "because the ball bearings are custom-made, SNFA intended its products to be an inseparable part of the marketing plan of Agusta." *Id.* at 332.

Here, the facts indicate that FONA's actions in creating butter flavorings specifically for companies that make microwave popcorn for sale in grocery stores to consumers means that sale of its products in Colorado is not simply fortuitous, happenstance, or isolated, but arises from its own efforts "to serve, directly or indirectly, the market for its products in other States" through a well established distribution chain. *See Asahi*, 480 U.S. at 110. In addition, there is evidence that FONA's representatives knew that the microwave popcorn could be sold in any state in which Kroger distributes its products. Given the light burden on the Plaintiffs, and drawing all reasonable

9

inferences in their favor, I conclude that Plaintiffs have made a prima facie showing regarding the requisite minimum contacts.[2]

I now examine whether exercising personal jurisdiction would offend traditional notions of fair play and substantial justice, look at such factors as (1) the burden on the defendant; (2) the forum state's interest in resolving the dispute; (3) the plaintiff's interest in receiving convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies.

Applying the first factor, I conclude that the burden on FONA is not onerous. Given modern travel and telecommunications, it is not unduly burdensome to require FONA's representatives to travel or call from Illinois to Colorado. The second factor weighs in favor of exercising jurisdiction, since Plaintiffs are Colorado residents and Wayne Watson's injuries occurred in Colorado. The third factor also weighs in favor of jurisdiction, as the Plaintiffs here have a strong interest in having all the defendants in a single lawsuit rather than pursuing piece meal litigation, and the other defendants do not dispute jurisdiction. This also applies to the fourth factor, the interstate judicial system's interest in obtaining efficient resolution of this dispute. I agree with Plaintiffs that since all the defendants come from different states, no other single state has a greater interest in resolving this matter than Colorado. I note that much of the relevant discovery from the other defendants will likely be obtained from sources outside of

---

[2]Because of the light burden at this stage of the case, FONA is not precluded from raising the issue again. *See, e.g., Goettman v. North Fork Valley Restaurant*, 176 P.3d 60, 66 (Colo. 2007).

Colorado (although not in the same location), whereas nearly all information relating to the Plaintiffs will be in Colorado. As a result, it does not appear that any other forum provides significant advantages in this regard. In addition, the parties seem to understand that Colorado law will apply to Plaintiffs' claim. Finally, FONA does not identify any facts or argument relating to the fifth factor that would tip the balance in favor of declining jurisdiction.

Accordingly, it is ordered:

1. Motion to Dismiss (doc no 36) filed by Defendant FONA International, Inc., f/k/a Flavors of North America, Inc., is denied without prejudice.

DATED at Denver, Colorado, on January 7, 2009.

BY THE COURT:

s/ Walker D. Miller
United States Senior District Judge