IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
SENIOR JUDGE WALKER D. MILLER

Civil Action No. 08-cv-00091-WDM-CBS

WAYNE WATSON and
MARY WATSON,

      Plaintiffs,

v.

DILLON COMPANIES, INC., d/b/a/ KING SOOPERS, also d/b/a INTER-AMERICAN
PRODUCTS, INC., et al.,

      Defendants,

and

FONA INTERNATIONAL, INC.,

      Third Party Plaintiff,

v.

ADVANCED BIOTECH,
BERJE, INC.,
CITRUS & ALLIED ESSENCES, LTD.,
O'LAUGHLIN INDUSTRIES CO., LTD.,
PHOENIX AROMAS & ESSENTIAL OILS, and
POLAROME INTERNATIONAL, INC.,

      Third Party Defendants.

---

## ORDER ON MOTION TO DISMISS

---

Miller, J.

      This matter is before me on the Motions to Dismiss (doc nos 185, 200, 225, 242,

309, and 315 ) filed by Third Party Defendants Polarome International, Inc.

("Polarome"), O'Laughlin Industries, Inc. ("O'Laughlin"), Centrome, Inc., d/b/a Advanced

Biotech ("Centrome"), and Phoenix Aromas & Essential Oils, Inc. ("Phoenix") (collectively "Suppliers").[1]  Suppliers seek dismissal of the Amended Complaint (doc no 296) filed by Third Party Plaintiff FONA International, Inc., f/k/a Flavors of North America, Inc., ("FONA").  Suppliers assert that they lack sufficient minimum contacts with the state of Colorado and, therefore, personal jurisdiction does not exist.  The motions are opposed by FONA.  After review of the parties' written arguments and tendered evidence, I conclude oral argument is not required.  For the reasons that follow, the motions will be granted.

<u>Background</u>

Plaintiffs Wayne and Mary Watson are residents of Colorado.  This personal injury lawsuit is based on Wayne Watson's serious and permanent lung illness allegedly resulting from exposure to butter flavoring products contained in microwave popcorn.  According to the Third Amended Complaint (doc no 18), Wayne Watson purchased and consumed microwave popcorn sold under the label "Kroger" and "First Choice" from the King Soopers grocery store in Centennial, Colorado from 2001 to 2007.  The popcorn was manufactured by Defendants Agrilink/Birds Eye and by  Defendant Gilster-Mary Lee using ingredients supplied by various other Defendants in the primary case.  The key ingredient allegedly causing Wayne Watson's lung condition is diacetyl.  FONA, one of the butter flavoring manufacturers, has filed this third party action against various suppliers of diacetyl.

---

[1]Several of these motions were filed before FONA filed its First Amended Complaint (doc no 296) but were either refiled or are still applicable since the fundamental issue, personal jurisdiction, is not modified by the First Amended Complaint.

Suppliers share essentially the same background facts regarding jurisdiction. They note that FONA is a flavor manufacturer located in Illinois.  FONA is alleged to have manufactured a butter flavoring that it sold to another Illinois corporation, Flavor Concepts, which ultimately was incorporated in microwave popcorn manufactured by Gilster-Mary Lee at a plant in Missouri.  For the purposes of the motions to dismiss, Suppliers do not dispute that they supplied diacetyl to FONA's Illinois facility during the relevant time period.

Polarome is a New York corporation with its principal place of business in New Jersey.  Polarome is a supplier/distributor of flavor and fragrance ingredients, but does not manufacture diacetyl or any other ingredient it sells.  O'Laughlin is incorporated in Georgia and has facilities in New Jersey.  It also does not manufacture diacetyl but rather obtains it from an affiliated company, headquartered in Hong Kong, for distribution to flavoring and fragrance companies.  Phoenix is a New York corporation with its principal place of business in New Jersey.  It does not manufacture diacetyl or any other flavor ingredient.  Centrome is a New Jersey corporation with its principal place of business in New Jersey.  It manufactures some of the raw ingredients it sells but is only a reseller/distributor of diacetyl.

Suppliers all present evidence that they had no knowledge of the end uses or destinations of the diacetyl that they sold to FONA; indeed, several of their representatives testified in depositions that the purchasers of these raw ingredients do not disclose the intended use of the materials.  *See, e.g.*, Deposition of Joseph Richard Schreiber, Exh. B to FONA's Response to O'Laughlin's Motion to Dismiss (doc no 342-3) at 55 ("Flavor companies are very tight lipped on what they - what they're using your

3

product for, they just don't talk about it.  People just don't talk about that.  You don't ask, and nobody's going to tell you, it's just something in the industry you know that.").  The diacetyl also was not specially formulated or otherwise tailored for FONA, but rather was the same material distributed to other customers for a variety of different uses, including for food and non-food products.  The Suppliers present evidence to show that they did not know that the diacetyl they sold to FONA would be used in microwave popcorn butter flavoring that ultimately would be sold in grocery stores in Colorado. Their representatives concede, however, that they knew that their raw ingredients could end up in a variety of consumer products, including possibly products containing butter flavoring, and ultimately be sold anywhere in the United States.

Suppliers do not market directly to customers in Colorado.  Some of them do, however, advertise generally.  Polarome advertises in trade magazines.  Phoenix has a company website and placed advertisements in trade magazines during the relevant time period, but they were general advertisements about the company that did not list any products.  Centrome also advertised in two trade magazines and has a website.

None of the Suppliers has offices, agents, or operations in Colorado, none owns real property within in the state, and none maintains a mailing address or telephone number within the state.  They are not registered to do business in Colorado and do not have a registered agent for service of process in Colorado.

O'Laughlin and Phoenix have made no direct sales to any customer in Colorado. Centrome made one sale to a customer in Colorado in 1997 but has not made any direct sales in Colorado since that time.  Polarome, however, from 2003 to 2007 made occasional sales (1-12 annually) within the state to approximately 9 different customers,

4

none of whom is a party in this lawsuit.  These sales are unrelated to this litigation.

Polarome's annual sales in Colorado ranged from approximately $9000 to $19,500, and

represented only a tiny fraction (less than 1%) of Polarome's total sales.  According to

undisputed evidence provided by Polarome, these sales resulted from unsolicited

contacts and did not result in travel to the state by any Polarome employee or

representative.

<u>Standard of Review</u>

In determining whether the exercise of personal jurisdiction over an out-of-state

defendant is appropriate, federal courts undertake two inquiries:  whether there is a

basis for jurisdiction under the forum state's long-arm statute and whether the exercise

of that jurisdiction comports with principles of federal due process.  *Kuenzle v. HTM*

*Sport-Und Freizeitgerate AG*, 102 F.3d 453, 455 (10th Cir. 1996).  Because Colorado's

long-arm statute reaches "to the fullest extent permitted by the due process clause of

the fourteenth amendment to the United States Constitution," *Safari Outfitters, Inc. v.*

*Superior Court,* 167 Colo. 456, 459, 448 P.2d 783, 784 (1968), the only issue before me

is whether exercising personal jurisdiction over Tembec Canada in this case is

consistent with federal due process.  *Kuenzle*, 102 F.3d at 455.

Whether the exercise of personal jurisdiction comports with due process is

determined under federal law.  *SGI Air Holdings II LLC v. Novartis Int'l AG*, 239 F. Supp.

2d 1161, 1163 (D. Colo. 2003).  To comport with due process, the plaintiff must show

that the defendant has had adequate minimum contacts with the forum state and that

the maintenance of the suit does not offend traditional notions of fair play and

substantial justice.  *Id.* (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945)).

5

Personal jurisdiction over defendants may be either general or specific. General jurisdiction exists when the defendant's contacts with the forum state are so "continuous and systematic" that jurisdiction is appropriate even when the claims are unrelated to the defendant's contacts with the forum state. *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1533 (10th Cir. 1996). In contrast, specific jurisdiction exists when the defendant has "purposely directed" activities at residents of the forum and the litigation results from alleged injuries arising out of or relating to those activities. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462 (1985).

Once the requisite minimum contacts are established, I must still determine whether exercising personal jurisdiction would offend traditional notions of fair play and substantial justice, based on the circumstances of the case. *AST Sports Science, Inc. v. CLF Distrib. Ltd.,* 514 F.3d 1054, 1061 (10th Cir. 2008). Factors I must consider in this analysis include: (1) the burden on the defendant; (2) the forum state's interest in resolving the dispute; (3) the plaintiff's interest in receiving convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Id.*

Here, FONA bears the burden of establishing personal jurisdiction over Suppliers. *Behagen v. Amateur Basketball Ass'n of U.S.A.*, 744 F.2d 731, 733 (10th Cir. 1984). However, when the issue is raised before trial and decided on the basis of affidavits and other written materials, the plaintiff's burden is "light;" the plaintiff need only make a prima facie showing and all reasonable inferences must be drawn in the plaintiff's favor. *Id.*; *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Kozeny*, 115 F. Supp.

2d 1231, 1236 (D. Colo. 2000).

Discussion

Suppliers argue that they lack significant contacts with Colorado, having neither continuous and systematic business contacts sufficient to give rise to general jurisdiction nor contacts amounting to "purposely directed" activities for specific jurisdiction.

1.    Specific Jurisdiction

This case raises the classic and recurring issue of defining under what circumstances the mere distribution of a product will give rise to personal jurisdiction in a given state.  I previously addressed this in my order (doc no 117) denying without prejudice FONA's motion to dismiss for lack of personal jurisdiction, and will set forth the basic law in full again here.

The Supreme Court's most recent examination of the question of whether a manufacturer's placement of a product into the "stream of commerce," resulting in contacts with the state, justifies the exercise of jurisdiction is *Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102 (1987).  Writing for the plurality, Justice O'Connor notes that minimum contacts must be based on "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws."  480 U.S. at 109 (citation omitted).  Thus, "a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the act of placing the product into the stream into an act purposefully directed toward the forum state."  *Id.* at 112.  Rather, additional conduct of the defendant "may indicate an intent or purpose to

serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." *Id.* In support of its position, the *Asahi* plurality noted that when a corporation purposefully avails itself of the privilege of conducting activities in the forum state, the corporation has

> clear notice that it is subject to suit there, and can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to customers, or, if the risks are too great, severing its connection with the State. Hence if the sale of a product ... is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States ...

480 U.S. at 110 (citations and internal quotation marks omitted).

The concurring opinion, however, notes that "[t]he stream of commerce refers not to unpredictable current or eddies, but to the regular and anticipated flow of products from manufacture to distribution to retail sale.  As long as a participant in this process is aware that the final product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a surprise."  480 U.S. at 117 (Brennan, J., concurring).

As I previously observed, the Tenth Circuit has not addressed the disparities in the *Asahi* opinions.  *See generally Commissariat A L'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 395 F.3d 1315, 1321-22 & n. 7 (Fed.Cir.2005) (noting the differing standards and circuit split on whether Justice O'Connor's more rigorous approach or the more lenient standard of Justice Brennan should apply in cases

involving the manufacturer of a component of a final product).  With respect to FONA's motion to dismiss, I concluded that even applying a test requiring "something more" (sometimes referred to as "stream of commerce plus" standard), the exercise of jurisdiction was appropriate because FONA created butter flavorings specifically for companies that make microwave popcorn for sale in grocery stores to consumers and was aware that the final product would be sold in Kroger stores.  Therefore, I concluded that the sale of FONA's product in Colorado was not simply fortuitous, happenstance, or isolated, but arose from its own efforts "to serve, directly or indirectly, the market for its products in other States," including Colorado, through a well established distribution chain.  *See Asahi*, 480 U.S. at 110.

Many of the facts that sufficed to establish personal jurisdiction over FONA are not present here.  FONA contends that Suppliers knew that diacetyl was used in consumer food products, including possibly microwave popcorn, and that such products are distributed to consumers all over the country.  FONA also points to the fact that Polarome was an exclusive U.S. distributor of diacetyl for a company known as Gist-Brocade from 1962 to 2001 and was apparently seeking other exclusive distributor arrangements, efforts which were abandoned because Polarome ceased its diacetyl sales around 2005.

Although the burden on FONA is "light," the facts upon which FONA relies demonstrate only that Suppliers could have foreseen that their diacetyl could have ended up in a consumer product in Colorado.  However, foreseeability alone is not the proper standard.  *World-Wide Volkswagen Corp. v. Woodsen,* 444 U.S. 286, 296 (1980); *see also Fleet Leasing, Inc. v. District Court*, 649 P.2d 1074, 1081-82 (Colo.

1982) (citing *World Wide Volkswagen* for the proposition that "foreseeability alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause").   The chain of sale and distribution here is quite attenuated, involving first the sale of Suppliers' diacetyl to FONA, which created butter flavoring and sold the butter flavoring to Flavor Concepts, which then sold the flavoring to Gilster-Mary Lee, which incorporated the seasoning in the manufacture of microwave popcorn, which was then sold under the Kroger name in Kroger stores, including stores in Colorado.  Suppliers' product was not specifically designed for FONA or for the final product; moreover, Suppliers were unaware of FONA's use of the diacetyl.  Under either the more lenient or more stringent test articulated in *Asahi*, the facts here do not demonstrate that Suppliers "purposely directed" activities at residents of Colorado such that the exercise of specific personal jurisdiction is proper here.

2.   <u>General Jurisdiction</u>

Of the Suppliers, only Polarome has had more than a single instance of direct sales to Colorado, which could arguably give rise to general jurisdiction.  FONA asserts that Polarome's unrelated activities in the state of Colorado, specifically its previous sales to other customers in the state, are sufficiently "continuous and systematic" to confer general jurisdiction.  As set forth above, Polarome has made repeated sales to approximately nine customers in Colorado during the relevant time period.

Several factors are often considered to determine whether general jurisdiction is present: (1) the corporation's solicitation of business in the state through local offices or agents; (2) the corporation's sending agents into the state on a regular basis to solicit business; (3) the corporation's holding itself out as doing business in the forum state

through advertisements, listings, or bank accounts; or (4) the volume of business

conducted in the state by the corporation.  *Kuenzle*, 102 F.3d at 457

　　As noted, there is no evidence of solicitation or the sending of agents by

Polarome to Colorado.  FONA has presented evidence that Polarome advertises in

trade magazines, but no evidence that Polarome holds itself out as doing business in

Colorado.  Similarly, Polarome's volume of sales in Colorado is rather insignificant.

Nonetheless, the sales collectively do appear to represent contacts with the state that

are slightly more than random or isolated.[2]  Since the burden on FONA at this stage is

light, it is possible that FONA could make a prima facie showing regarding general

personal jurisdiction over Polarome.  However, as discussed further below, I conclude

that even if Polarome's contacts might satisfy the requirements of general jurisdiction, I

should nonetheless decline to exercise that jurisdiction.

　　Having considered as possible that Polarome's minimum contacts may suffice for

general jurisdiction, I now examine whether exercising personal jurisdiction would offend

traditional notions of fair play and substantial justice, looking at such factors as (1) the

burden on the defendant; (2) the forum state's interest in resolving the dispute; (3) the

plaintiff's interest in receiving convenient and effective relief; (4) the interstate judicial

system's interest in obtaining the most efficient resolution of controversies; and (5) the

shared interest of the several states in furthering fundamental substantive social

policies.

---

　　[2]FONA also argues that Polarome's efforts to become an exclusive distributor for
various companies amount to continuous and systematic contacts in Colorado.
However, given that these efforts were unsuccessful and the communications involving
exclusive distributorships did not involve Colorado, this fact is immaterial.

Applying the first factor, I conclude that the burden on Polarome, as well as the other Suppliers, is notable but not onerous.  The Suppliers are generally located in the New York/New Jersey area, which is a fair distance but not unsurmountable.  This factor, therefore, does not weigh strongly in either direction.

The second factor, Colorado's interest in resolving the dispute, weighs against the exercise of jurisdiction.  Unlike the primary case, which involves Colorado residents as Plaintiffs in a personal injury case, the dispute between FONA and Suppliers involves only non-resident parties.  Similarly, the relevant events, such as the formation of the business relationship, transactions, and governing agreements, are totally unrelated to Colorado.  The only fact connecting the dispute to Colorado is that the potential judgment, if one is entered against FONA thereby entitling FONA to seek contribution, would be entered in this court.

The third factor, the plaintiff's interest in receiving convenient and effective relief, is generally neutral.  Although I may have jurisdiction over Polarome, I do not have jurisdiction over O'Laughlin, Phoenix, and Centrome, which means that part of the case will have to be litigated in other fora.  Moreover, given that FONA's right to contribution from each third party defendant will depend on the specific facts and circumstances of the relationship between FONA and that defendant, there may be no real efficiencies in keeping the case in one court.  It is also not clear whether the same law, much less Colorado law, will apply to each third party defendant, as no choice of law analysis has been provided on this issue.

The fourth factor, the interstate judicial system's interest in obtaining efficient resolution of this dispute, also does not weigh in favor of the exercise of jurisdiction.

Again, unlike the primary litigation, none of the parties has any connection to Colorado. It appears that judicial efficiency would be better served by litigating the case in another forum where jurisdiction is more clearly established for all the third party defendants; presumably Illinois would serve, since all of the third party defendants allegedly did business with FONA there.  Similarly, it does not appear that evidence or witnesses relating to FONA's right of contribution and the culpability of the third party defendants would be located in Colorado, which again reduces the efficiency of litigating the matter in this forum.  There appear to be several fora, including Illinois or New Jersey, that would be superior to Colorado in this regard.

Finally, I conclude that the fifth factor, the shared interest of the several states in furthering fundamental substantive social policies, does not weigh in favor of maintaining the third party action in Colorado.  With no connection to the state, this litigation does not implicate Colorado's policy interests, whereas it is possible that the policy interests of other states, such as Illinois or New Jersey, may come into play.

Given the discussion above, and the relatively weak showing of jurisdiction as to only one third party defendant and no showing as to the others, I conclude that the exercise of jurisdiction over Polarome is not reasonable and will offend traditional notions of fair play and substantial justice.

Accordingly, it is ordered:

1.      Motions to Dismiss (doc nos 185, 200, 225, 242, 309, and 315 ) filed by Third Party Defendants Polarome International, Inc., O'Laughlin Industries, Inc., Centrome, Inc., d/b/a Advanced Biotech, and Phoenix Aromas & Essential Oils, Inc., are granted.

13

2.      The claims against these third party defendants are dismissed without

prejudice for lack of jurisdiction.

DATED at Denver, Colorado, on October 9, 2009.

BY THE COURT:


s/ Walker D. Miller
United States Senior District Judge