## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 08-CV-00091-WDM-CBS

WAYNE WATSON and MARY WATSON

    Plaintiffs,



    v.

DILLON COMPANIES, INC., d/b/a
KING SOOPERS, also d/b/a
INTER-AMERICAN-PRODUCTS, INC., et al.

    Defendants.

### PLAINTIFFS' MOTION FOR LEAVE TO AMEND COMPLAINT AND ADD CLAIM OF EXEMPLARY AND PUNITIVE DAMAGES AS AGAINST DEFENDANT GILSTER-MARY LEE CORPORATION

COME NOW Plaintiffs and, pursuant to C.R.S.A. § 13-21-102, move this Court for an Order granting Plaintiffs leave to amend their operative complaint, adding a claim for punitive damages as against Defendant Gilster-Mary Lee Corporation.

The evidence demonstrates a *prima facie* case against Defendant Gilster-Mary Lee supporting an award of exemplary damages. Further support for this motion is contained in the brief filed herewith.

WHEREFORE, Plaintiffs ask this Court for a Order of granting Plaintiffs leave to amend their Complaint, adding a claim of exemplary and punitive damages as against Defendant Gilster-Mary Lee Corp.

Respectfully submitted,

HUMPHREY, FARRINGTON & McCLAIN, P.C.

_____/S/ Andrew K. Smith_____
HUMPHREY, FARRINGTON & McCLAIN, P.C.
Kenneth B. McClain          MO# 32430
Steven E. Crick             MO# 32654
Scott A. Britton-Mehlisch   MO#36761
Andrew K. Smith             NE# 22480
221 West Lexington, Suite 400
Independence, Missouri 64051
Telephone:    (816) 836-5050
Facsimile:    (816) 836-8966

*ATTORNEYS FOR PLAINTIFFS*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above-foregoing document was served via E-mail and regular U.S. Mail, postage prepaid this 15th day of April, 2010 to the parties named on the attached list.

S/Andrew K. Smith_____
ATTORNEY FOR PLAINTIFFS

-2-

WATSON SERVICE LIST
March 19, 2010

Jason D. Melichar
NELSON LEVINE DE LUCA
& HORST, LLC
1512 Larimer Street, Suite 550
Denver, CO 80202
(303) 573-4823
(303) 573-0206 - FAX
jmelichar@nldhlaw.com
**ATTORNEYS FOR DILLON CO., INC.,
INTER-AMERICAN PRODUCTS, INC.,
& KROGER CO.** and **GILSTER-MARY
LEE CORP.**

Bruce A. Menk
Darin J. Lang
Hall & Evans, LLC
1125 - 17th Street, #600
Denver, CO 80202
(303) 628-3348
(303) 825-4978 -FAX
menkb@hallevans.com
langd@hallevans.com
        and
Kenneth J. Barrish
Scott D. Stephenson
Litchfield Cavo LLP
303 W. Madison Street, Suite 300
Chicago, IL 60606
(312) 781-6640
(312) 781-6630 - FAX
Barrish@litchfieldcavo.com
Stephenson@litchfieldcavo.com
**COUNSEL FOR BIRDS EYE**

Frank C. Woodside III
Mary-Jo Middelhoff Pullen
Daniel Jones
Dinsmore & Shohl, LLP
1900 Chemed Center
255 East Fifth Street, Ste. 1900
Cincinnati Ohio 45202
(513) 977-8200
(513) 977-8141 - FAX
frank.woodside@dinslaw.com
maryjo.middelhoff@dinslaw.com
daniel.jones@dinslaw.com
        and
Richard W. Pruett
Dennis H. Markusson
Markusson, Green & Jarvis, PC
999 18th Street, Suite 3300
Denver, CO 80202
(303) 572-4200
(303) 595-3780 - FAX
markusson@mgjlaw.com
pruett@mgjlaw.com
**COUNSEL FOR INTERNATIONAL
FLAVORS & FRAGRANCES, INC.
AND BUSH BOAKE ALLEN, INC.**

Philip B. Cardi
Andrew S. Ford
Jackson Kelly, PLLC
1099 18th Street, Suite 2150
Denver, CO 80202
(303) 390-0003
(303) 390-0177 - FAX
pcardi@jacksonkelly.com
asford@jacksonkelly.com
**COUNSEL FOR CARPET
TECHNOLOGIES, INC., n/k/a
CHEMICAL TECHNOLOGIES
INTERNATIONAL, INC.**

-3-

Karen H. Wheeler
Jesse O. Brant
Levy, Morse & Wheeler
6400 S. Fiddlers Green Circle, Suite 900
Englewood, CO 80111
(303) 796-2900
(303) 796-2081 - FAX
kwheeler@levymorsewheeler.com
jbrant@levymorsewheeler.com
**COUNSEL FOR THIRD PARTY DEFENDANT BRIDGEPOINT SYSTEMS, INC., d/b/a BRIDGEWATER, INC.**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 08-CV-00091-WDM-CBS

WAYNE WATSON and MARY WATSON

      Plaintiffs,

      v.

DILLON COMPANIES, INC., d/b/a
KING SOOPERS, also d/b/a
INTER-AMERICAN-PRODUCTS, INC., et al.

      Defendants.

**PLAINTIFFS' BRIEF IN SUPPORT OF
MOTION FOR LEAVE TO FILE AMENDED COMPLAINT ADDING
CLAIM OF EXEMPLARY AND PUNITIVE DAMAGES AS AGAINST
<u>DEFENDANT GILSTER-MARY LEE CORPORATION</u>**

**I.      Introduction**

Plaintiffs submit that the jury can and should be allowed to consider an award of exemplary and punitive damages as against Defendant Gilster-Mary Lee Corp.  Under Colorado law, the evidence in this case clearly demonstrates *prima facie* proof of a triable issue as to exemplary damages against Gilster-Mary Lee.

**II.      Argument**

Under C.R.S.A. 13-21-102(1)(a), when an injury such as alleged by Wayne Watson is "attended by circumstances of fraud, malice, or willful and wanton conduct, the jury, in addition to the actual damages sustained . . . may award him reasonable exemplary damages."  Willful and wanton conduct, for purposes of the exemplary damages statute,  " . . . means conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without

regard to consequences, or of the rights and safety of others, particularly the plaintiff." C.R.S.A. 13-21-102(1)(b).

The evidence against Gilster-Mary Lee in this case is staggering and tragic. As will be shown below, Gilster-Mary Lee knew of the dangers of the flavorings in its microwave popcorn; that numerous Gilster-Mary Lee employees at the plant where the at-issue popcorn was made that workers had bronchiolitis obliterans, the same rare disease now suffered by Wayne Watson; that butter flavoring caused bronchiolitis obliterans; that precautions including respirators were needed when cooking microwave popcorn in a microwave; that persons who cooked microwave popcorn were at risk of bronchiolitis obliterans; and that it should warn its customers of this hazard and yet it concealed this information and failed to warn those such as Wayne Watson who were being exposed unwittingly to a deadly chemical in their own kitchens and homes. The following summary of the evidence shows that the jury in this case should be allowed to consider awarding exemplary damages here:

1.      Gilster-Mary Lee corporation acquired Jasper Popcorn Company on January 5, 1999. Exh. 1, 11/18/09 Dep. of Tom Welge at p. 30, lines 23 to 25.

2.      Gilster-Mary Lee makes almost one half of all private label microwave popcorn sold in the U.S. Exh. 1, Dep. of Tom Welge at p.84, lines 9 to 14. Private label microwave popcorn is a product that, although made by Gilster-Mary Lee, bears a label of the Gilster-Mary Lee customer, such as Kroger. Id. at p. 10, line 9 to p. 11, line 1.

3.      Gilster-Mary Lee manufactured private label microwave popcorn for Kroger under the private label of Kroger and also First Choice. Exh. 2, Gilster-Mary Lee's Objections and Supplemental Responses to Plaintiffs' First Set of Interrogatories and Requests for Production of

Documents and Things; Supplemental Response to Interrogatory No. 1, pgs. 6 to 8.  Gilster-Mary Lee began making First Choice brand microwave popcorn prior to 2000.  Id.  Birds Eye made Kroger Butter and Kroger Movie Theater Butter microwave popcorn until 2003.  Exh. 3, Defendant Birds Eye Foods, Inc.'s Responses to Plaintiffs' First Set of Interrogatories and Plaintiffs' First Set of Request for Production, Response to Interrogatory No. 1, p. 4.  In 2003 Gilster-Mary Lee acquired Birds Eye's microwave popcorn business and began making the Kroger Butter and Kroger Movie Theater Butter popcorn products.  Exh. 1, Dep. of Tom Welge at p. 19, line 9 to p. 20, line 15.

4.      Kroger owns and operates grocery stores called King Sooper including King Sooper stores in the Denver, Colorado area.  Exh. 4, Defendant Dillon Companies, Inc., d/b/a King Soopers, Inter-American -Products, Inc. and Kroger Co. Answers to Plaintiffs' First Set of Interrogatories, Response to Interrogatory No. 2, p. 2 - 3.

5.      Gilster-Mary Lee delivered Kroger Butter, Kroger Movie Theater Butter and First Choice microwave to King Sooper in Colorado.  Exh. 1, Dep. of Tom Welge at p. 71, lines 7 to18.

6.      Between 2000-2007, Plaintiffs purchased  Kroger Butter, Kroger Movie Theater Butter and First Choice Movie Theater Butter microwave popcorn at King Sooper stores.  Exh.5 Plaintiffs' Answers to Defendant International Flavors & Fragrances, Inc.'s First Set of Interrogatories to Plaintiffs.  Wayne Watson cooked the popcorn at home using their microwave oven.  The popcorn had a buttery aroma and Wayne Watson inhaled the aromatic flavor.  Exh. 19, Affidavit of Wayne Watson.

7.      The Kroger Butter, Kroger Movie Theater Butter and First Choice Movie Theater Butter microwave popcorn products contained butter flavoring which contained diacetyl.  Exh.1, Dep. of Tom Welge at p. 60, line 18 to p. 61, line 2.

8.      Gilster-Mary Lee has never conducted a toxicology study to determine if its microwave popcorn was flavoring was safe to inhale.  Id. at p. 73, line 21 to p. 74, line 1.

9.      Gilster-Mary Lee has never performed any test or toxicology studies to determine if the butter flavoring in its popcorn was a hazard to health.  Id. at p. 42, lines 12 - 15.

10.     On Dec. 30, 1999 five employees filed workers' compensation claims against Gilster-Mary Lee Corp. alleging that they had developed permanent lung injuries from exposure to hazards at the Jasper Popcorn Company plant, Jasper, Missouri.  Exh. 6, (Exh. 6 and 5 of Tom Welge dep.)

11.     In May 2000, nine former workers at Gilster-Mary Lee Corp. were reported to the Missouri Department of Health by an occupational medicine physician to have bronchiolitis obliterans, a severe lung disease characterized by fixed airflow obstruction.  Four of these workers were placed on a lung transplant list.  Exh. 7, NIOSH Interim Report, Aug. 22, 2001, p. 4.

12.     In August 2000, on the basis of this report, the Missouri Department of Health requested technical assistance from the Centers for Disease Control and Prevention's National Institute for Occupational Safety & Health (NIOSH) to determine whether exposures at the popcorn plant contributed to the disease and whether other former and current workers had developed this illness.  Id.

13.     In August 2000 the National Institute of Occupational Safety & Health (NIOSH) conducted a Health Hazard Evaluation (HHE) of the Gilster-Mary Lee microwave popcorn plant in Jasper, Missouri.  Id.

14.     From Oct. 30 to Dec. 2000, NIOSH conducted the following acts at the Gilster-Mary Lee plant in Jasper, MO:  a medical survey of current plant workers, quantitative industrial hygiene

-4-

surveys, respirator training and fit testing of certain plant workers, conducted animal exposure studies of butter flavoring.  Id..

15.     NIOSH reported on its findings to Gilster-Mary Lee in Aug. 2000 stating that:

Plant employees had 2.6 times the rates of chronic cough and shortness of breath compared to national data, adjusted for smoking and age group; younger employees who had never smoked had rates about five times higher than expected from national rates.  Overall, plant employees had 3.3 times the rate of obstructive spirometry abnormalities compared to national adjusted rates; never smokers had 10.8 times the national expected rate.  Worker reports of physician-diagnosed asthma and chronic bronchitis were about twice as frequent as expected from national data, with a 3.3-fold excess of chronic bronchitis in never smokers.  Microwave popcorn workers had statistically higher rates of regular trouble breathing and unusual fatigue, compared with workers in two lower exposure groups.  Strong exposure-response relationships existed between quartile of estimated cumulative exposures to diacetyl and respirable dust and frequency and degree of airway obstruction.

Id. at p. 2.

16.     NIOSH reported in that Aug. 2000 report that "BBA butter flavoring, which contains diacetyl and many volatile organic compounds, has caused damage to epithelial lining of the rat respiratory system in animal experiments."  Id. at p. 18.

17.     On Sept. 7, 2001, fifteen employees of the Jasper plant filed a class action lawsuit against International Flavors and Fragrances alleging that they had suffered lung injury as a result of exposure to butter flavoring at the Jasper popcorn plant.  Exh. 8, Complaint, Benavides, et al. v. International Flavors and Fragrances, Inc. et al., Case No.  01-CV-683025-01 Circuit Court of Jasper County, Missouri.

18.     Gilster-Mary Lee became aware of the civil lawsuit at or about the time that it was filed.  Exh. 1, Dep. of Tom Welge at p. 55, line 23 to p. 56, line 1.

19.     In 2001 no one from Gilster-Mary Lee contacted Kroger and told it of the NIOSH investigation into diacetyl. Exh.1, Dep. of Tom Welge at p. 54 line 13-16.

20.     By the end of 2002, at least 21 employees of the Jasper plant had filed workers compensation claims against Gilster-Mary Lee alleging that they suffered permanent lung injury. Exh. 6, (Exh. 6 and 5 of Tom Welge dep.)

21.     At the Gilster-Mary Lee plant in Jasper, there is a Quality Control room.  This room consists of tables with microwave ovens used to pop microwave popcorn.  Exh. 9, 11/19/09 Deposition of Eric Asselmeier at p. 27, lines 13 - 18.

22.     On July 26, 2002, NIOSH sent an Interim Letter Report to Gilster-Mary Lee  In that report, NIOSH stated:

> "QC workers are repeatedly exposed for intervals of several seconds up to several minutes to elevated organic vapor concentrations by work processes throughout the shift.  The sources of these vapors are the following:
>
> 1.     Microwave oven fan exhaust air during cooking of the corn;
> 2.     Bursts of steam and flavoring vapors ejected as bags are opened;
> 3.     Vapors rising from corn while being loaded into graduated cylinder."

Additionally, the increased heat from microwaving the popcorn and flavoring ingredients can create a profile of volatile organic compounds different from other plant areas." Exh. 10, at p. 2.  NIOSH reported that:

> "ventilation in the QC room consists of a small ceiling fan located towards the rear of the room.  This ventilation is not adequate to remove the volatile compounds generated through QC testing."  NIOSH suggested "that a vented enclosure(s), similar to a laboratory hood, be installed and all of the testing operations that involve heated popcorn flavorings be performed within that enclosure.  It should have a vertical sash in front that can be lowered to the minimal height that allows the workers to perform their tasks with their arms under the sash.  Ventilation slots should be located to the rear of the enclosure.  It may be necessary to seal the top,

bottom, and sides of the ovens so that the air will be directed only to the ventilation slots at the rear." Id. at p. 3.

23.     Gilster-Mary Lee did not advise Kroger of this recommendation for safety precautions when using a microwave oven to pop microwave popcorn. Exh. 1, Dep. of Tom Welge at p. 67 line 13 to p. 68 line 17.

24.     On Aug. 2, 2002, NIOSH sent to Gilster-Mary Lee a Worker Update about NIOSH Testing at Jasper Popcorn. Exh.11.  In that update, NIOSH stated:

> "We believe that butter flavoring vapors in the air caused lung disease in workers at this plant." Id. at p. 2.  NIOSH stated regarding the Quality Control area exposures: "Many quality control workers had abnormal breathing tests and have continued risk even after the ventilation changes in the plant.  Based on our survey results, we believe that they may receive many peak exposures to flavoring vapors when microwaving the popcorn bags, opening them, and measuring the amount of hot popcorn. When the popcorn/flavorings temperature increased, the vapors increased, although the high exposures only lasted for seconds or a few minutes.  We are concerned about these short peak exposures in the quality control room and have provided recommendations for control." Id. At p. GML 22302.  In that same report, NIOSH suggested "What can you do?  Wear a respirator (mask) if you have abnormal breathing tests, large falls in your breathing tests, or concern about the safety of the work environment.  This is especially important for those in quality control until exposures in quality control are lowered." Id. at p. GML22302.

25.     On Nov. 26, 2002 Gilster-Mary Lee wrote to Kenneth Haubein, from whom Gilster-Mary Lee purchased the popcorn plant in Jasper, Missouri and complained that due to the lung injury claims Gilster-Mary Lee was being compelled to pay $2.5 Million into an escrow account for the claims.  Exh. 12.

26.     On Dec. 13, 2002, NIOSH sent an Interim Letter Report to Gilster-Mary Lee.  Exh. 13.  In that report, NIOSH observed that Gilster-Mary Lee had added a hood enclosure to the QC bench.

> "The hood used existing QC room exhaust ventilation and had plastic front curtains to allow worker access for quality tests.  All quality tests were done

within the hood.  "Further, microwaved bags of popcorn were allowed to cool prior to opening for subsequent QC tests, further reducing volatilization of flavoring constituents and worker exposures. ... Further engineering control changes are planned for the QC room including 1) the redesign of the existing hood to increase the size of the exhaust fan and hood; 2) redirecting the microwave oven exhausts away from the hood opening 3) increased exhaust air, and 4) a powered source for air supply.  Collectively these control modifications should further reduce worker exposures and should be further evaluated with environmental sampling."

Id. at p. 2.

NIOSH made additional recommendations to Gilster-Mary Lee:

1.      Communicate these findings to your workforce, so that workers can again weigh their lung risks in the plant and the advisability of respiratory protection.  This is particularly important for those with abnormal lung function, those with rapid falls, and those in job categories with direct exposure to flavoring volatiles in mixing and quality control.  We will prepare a worker update sheet to assist in this effort and assume that you will revitalize your respiratory protection program.

7.      "Evaluate whether diacetyl and other volatile butter flavoring exposures can be lowered by changing flavoring formulations used in your microwave popcorn products, at least until exposure controls are effective in preventing continuing loss of lung function in employees."

Id. at pp. 5-6.

27.     Gilster-Mary Lee used powered air respirators where the worker wore a hood which was tethered to a filtered air line.  They would blow air into a hood.  Exh. 9, Dep. Of Eric Asselmeier at pp. 23-24.  See also, Exh. 14, a photograph of a Gilster-Mary Lee worker wearing a powered air respirator.

28.     Gilster-Mary Lee workers were wearing respirators working with the same flavors that were going into bags of private label microwave popcorn.  Exh. 1, Dep. of Tom Welge at p. 51.

29.     Early on in this process, Gilster-Mary Lee Corporate Sanitarian, Eric Asselmeier contacted flavor manufacturer, International Flavors & Fragrances to ask how they should handle the flavor.  He spoke to IFF General Counsel, Dennis Meaney.  Meaney told Asselmeier not to heat the product.  Exh. 9, Dep. of Eric Asselmeier at p. 40, line 12 to p. 41 line 18.

30.     Microwave popcorn is intended to be heated.  Exh. 9, Dep. of Eric Asselmeier at p. 41 lines 10 to 12.

31.     Gilster-Mary Lee did not tell Kroger of this admonition not to heat the butter flavor.  Exh. 9, Dep. of Eric Asselmeier at p. 41, line 19 to p. 42,  line 9.

32.     Gilster-Mary Lee Corporate Sanitarian, Eric Asselmeier, told a meeting of microwave popcorn manufacturers that this problem was so difficult he would not wish it on its worst competitor.  Exh. 9, Dep. of Eric Asselmeier at p. 36, line 22 to p. 37, line 13.

33.     Gilster-Mary Lee did not decide to use a butter flavor with no added diacetyl until 2006.  Exh. 1, Dep. of Tom Welge at p. 76, line 24 to p.77, line 3.

34.     Gilster-Mary Lee used butter flavoring from Flavor Concepts in Kroger brand Extra Butter and First Choice Extra Butter.  Exh. 2, <u>Gilster-Mary Lee's Objections and Supplemental Responses to Plaintiffs' First Set of Interrogatories and Requests for Production of Documents and Things</u>; Supplemental Response to Interrogatory No. 1, p. 6 to 8.  "Extra Butter is another name for "Movie Theater Butter."  Exh. 15, Dep of Donald Welge at p. 27, lines 14 to 23.

35.     In 2006, the MSDS for the Flavor Concepts butter flavoring stated:

Health Hazard Data: Health Hazards Including Signs and Symptoms of overexposure: Irritation and/or Reddish of the Eyes, Skin, and Respiratory Tract.  Coughing, Choking, Headaches, Dizziness, and Drowsiness.

Precautions for Safe Handling and Use: Handling and Storage Precautions: Full room ventilation is required for use of this product.  In confined areas or in uses with heat involved, centralized exhaust and a full face respirator are required.

Control Measures: Respiratory Protection: Full local room exhaust is required.  Wear a NIOSH approved respirator in areas of high flavor concentration usage.

Exh. 16.

36.     On or about Aug. 22, 2006, Flavor Concepts sent Gilster-Mary Lee a proposed Diacetyl MSDS Acknowledgment Form. Exh. 17.  The form asked Gilster-Mary Lee to confirm

a.      We have received and read the MSDS for butter flavoring (containing Diacetyl) in its entirety and fully understand its contents

b.      We have been advised that this material should not be used within a confined space or at an elevated temperature without proper ventilation or a NIOSH organic vapor respirator.

c.      We confirm the MSDS for this product has been distributed to anyone that may handle this item and they have been made fully aware of all the associated hazards.

d.      We confirm that if we resell this product or if we use it in a formulation, we will notify our customer of the associated hazards by delivery of a suitable MSDS.

Id. at p. C.

37.     Gilster-Mary Lee refused to sign the Diacetyl MSDS Acknowledgment form as drafted. Gilster-Mary Lee changed the form by:

a.      changing the third statement (36.c. above) from
          "We confirm the MSDS for this product has been distributed to anyone that may handle this item and they have been made fully aware of all the associated hazards."

          to

-10-

"We confirm the MSDS of this product is available for review by our employees."

    b.    deleting the fourth term: "We confirm that if we resell this product or if we use it in a formulation, we will notify our customer of the associated hazards by delivery of a suitable MSDS."

Id. at pp. C and F.

38.    The butter flavoring product that Gilster-Mary Lee received at Gilster-Mary Lee would have had a material safety data sheet, but the product that Gilster-Mary Lee sent to Colorado's King Sooper store wouldn't have had an MSDS or any kind of a warning.   Exh. 1, Dep. of Tom Welge at p. 133 line 25 to 134 line 5.

39.    The bags of Kroger and First Choice microwave popcorn did not contain a warning of potential lung hazards.   Exh. 1, Dep of Tom Welge at p. 133, line 17 to p. 134, line 5.

40.    Gilster-Mary Lee did not advise Kroger of the NIOSH investigation until September 2007.  Exh. 18, Exh. 1, Dep. of Tom Welge at p. 29 lines 1-15.  See also, Exh. 4, Defendant Dillon Companies, Inc., d/b/a King Soopers, Inter-American -Products, Inc. and Kroger Co. Answers to Plaintiffs' First Set of Interrogatories, Response to Interrogatory No. 7.

41.    Watson was not provided with notice or a warning that Gilster-Mary Lee microwaved popcorn using a laboratory hood with special ventilation.  Exh. 19, Affidavit of Wayne Watson.

42.    Watson did not use a laboratory hood making Kroger microwave popcorn.  Exh. 19, Affidavit of Wayne Watson.

43.    Gilster-Mary Lee first started selling popcorn with  no added diacetyl in the butter flavoring around 2007, five years later after NIOSH first suggested reformulating the product.  Exh. 15, Dep of Donald Welge at p. 54 line 11-25.

44.     Wayne Watson has butter flavor induced bronchiolitis obliterans from his exposure to diacetyl from cooking Kroger microwave popcorn manufactured by Gilster-Mary Lee Corp. Exh. 20, Report of Allen Parmet, M.D.

## III.     Argument.

Leave to amend is discretionary and should be liberally granted. <u>Polk v. Denver District Court</u>, 849 P.2d 23, 25 (Colo. 1993). Colorado's Supreme Court has recognized that CRCP 15(a) reflects a liberal policy of amendment and encourages trial courts to look favorably on requests to amend. <u>Varner v. District Court</u>, 618 P.2d 1388, 1390 (Colo. 1980).

Trial courts may permit amendments to pleadings at any stage of the litigation process so long as undue delay does not result and other parties are not prejudiced by such amendments. <u>Id.</u> at 77. Here, the motion was filed after evidence was gathered from Gilster-Mary Lee employees and corporate representatives. There will be no undue delay as there is no need for either party to conduct additional discovery on this issue or incur other expenses.

C.R.S. § 13-21-102(1.5) clearly states that **only *prima facie* proof of a triable issue** of exemplary damages is required in order for a Plaintiff to proceed with a claim for exemplary damages. Importantly, at this stage of the proceedings, namely the pleadings stage, **proof beyond reasonable doubt is not required**. The burden on Plaintiff is to:

> "Establish *prima facie* proof of willful and wanton conduct, not to prove willful and wanton conduct beyond a reasonable doubt, which is the burden of proof at trial. **This is a lenient standard.** A Plaintiff should have the opportunity to test the merits of any claim for relief that is supported by the underlying facts of the case." <u>Stamp v. Vail Corporation</u>, 172 P.3e 437, 450 (Colo. 2007) (Emphasis Added.)

*Prima facie* proof of a triable issue of exemplary damages is established by "a showing of a reasonable likelihood that the issue will ultimately be submitted to the jury for resolution." <u>Stamp</u>

v. Vail Corporation at 449. Such proof may be established through discovery, by evidentiary means, or by an offer of proof. Id. *Prima facie* evidence is evidence that, unless rebutted, is sufficient to establish a fact. Id.  Plaintiffs have in fact gone above and beyond their burden of *prima facie* proof of a triable issue in this case.  Section 13-2 1-102(1)(a) further provides in part that, "In all civil actions in which damages are assessed by a jury for a wrong done to the person or to personal or real property, and the injury complained of is attended by circumstances of fraud, malice, or willful and wanton conduct, **the jury**, in addition to the actual damages sustained by such party, **may award him reasonable exemplary damages**."

Exemplary damages are justified when the act causing the Plaintiff's injuries was performed "with such a wanton and reckless disregard of his rights as evidence a wrongful motive." Tri-Aspen Constr. Co. v. Johnson, 714 P.2d 484, 486 (Colo. 1986) (quoting Frick v. Abell, 198 Colo. 508, 511 602 P.2d 852, 854 (1979). "Wanton and reckless" conduct is defined as "conduct that creates a substantial risk of harm to another and is purposefully performed with an awareness of the risk in disregard of the consequences." Palmer v. A.H. Robins Co., 684 P.2d 187, 215 (Colo. 1984).  In the instant case, Defendant's conduct was unmistakably willful and wanton and it **knowingly** acted with, "an evil intent or wrongful motive…or created and then purposefully disregarded a substantial risk of harm." Pizza v. Wolf Creek Ski Dev. Corp., 711 P.2d 671 (Colo. 1985).  The Colorado Supreme Court indicated in the case of Mince v. Butters, 200 Colo. 501, 616 P.2d 127(Colo. 1980), that the allowance or denial of exemplary damages **rests in the discretion of the trier of fact.** Citing to Bolten v. Gates 105 Colo. 571, 100 P.2d 145 (1940); Schlessman v. Brainard, 104 Colo. 514, 92 P.2d 749 (1939).

The policy favoring amendments to pleadings recognizes that parties to the adversary process

-13-

may discover significant information relevant to a case long after the initial pleadings have been filed. Super Valu Stores, Inc. v. District Court, 906 P.2d 72, 77 (Colo. 1995). Plaintiff is entitled to his day in court which requires the ability to present his full range of damages.

In this case, Gilster-Mary Lee knew that exposure to butter flavoring caused bronchiolitis obliterans, an extremely rare disease; that cooking microwave popcorn required the use of special safety precautions to protect persons from exposure to hazardous flavor vapors; and that at least 21 Gilster-Mary Lee employees filed workers' compensation claims concerning their butter-flavored lung injuries. Gilster-Mary Lee was told by NIOSH to consider alternatives to butter flavor with diacetyl. Gilster-Mary Lee was told by IFF not to heat the butter flavor but used it anyway in a product its customers were to cook in a microwave. Gilster-Mary Lee was told to provide safety warnings to its customers and to anyone that may handle the butter flavoring. Gilster-Mary Lee knew that consumers, specifically including Wayne Watson, would cook microwave popcorn in their home, and be exposed to dangerous diacetyl vapors. Yet, Gilster-Mary Lee concealed this information from its customers – the grocery stores that sold it's popcorn to Wayne Watson – and from consumers. While Gilster-Mary Lee kept this information concealed and failed to warn of these dangers, Wayne Watson continued to cook two to three bags of popcorn in his home every day. And he did it exactly in the way Gilster-Mary Lee told him to. And exactly in the way that Gilster-Mary Lee knew caused lung disease.

## IV.    Conclusion

As the summary of the evidence above demonstrates, there is clearly a prime facie case for exemplary damages against Gilster-Mary Lee in this case, and a jury should be allowed to consider

that evidence and award a commiserate exemplary verdict.  Accordingly, Plaintiffs respectfully move

this Court for an order granting them leave to amend their punitive complaint so as to include a claim

for exemplary punitive damages against Gilster-Mary Lee.

Respectfully submitted,

HUMPHREY, FARRINGTON & McCLAIN, P.C.

_____/S/ Steven E. Crick_____

HUMPHREY, FARRINGTON & McCLAIN, P.C.
Kenneth B. McClain          MO# 32430
Steven E. Crick             MO# 32654
Scott A. Britton-Mehlisch   MO#36761
Andrew K. Smith             NE# 22480
221 West Lexington, Suite 400
Independence, Missouri 64051
Telephone:     (816) 836-5050
Facsimile:     (816) 836-8966
*ATTORNEYS FOR PLAINTIFFS*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above-foregoing document was served via E-mail and regular U.S. Mail, postage prepaid this _____ day of March, 2010 to the parties named on the attached list.

_____

ATTORNEY FOR PLAINTIFFS

WATSON SERVICE LIST
March 19, 2010

Jason D. Melichar
NELSON LEVINE DE LUCA
& HORST, LLC
1512 Larimer Street, Suite 550
Denver, CO 80202
(303) 573-4823
(303) 573-0206 - FAX
jmelichar@nldhlaw.com
**ATTORNEYS FOR DILLON CO., INC.,**
**INTER-AMERICAN PRODUCTS, INC.,**
**& KROGER CO.** and **GILSTER-MARY**
**LEE CORP.**

Bruce A. Menk
Darin J. Lang
Hall & Evans, LLC
1125 - 17th Street, #600
Denver, CO 80202
(303) 628-3348
(303) 825-4978 -FAX
menkb@hallevans.com
langd@hallevans.com
          and
Kenneth J. Barrish
Scott D. Stephenson
Litchfield Cavo LLP
303 W. Madison Street, Suite 300
Chicago, IL 60606
(312) 781-6640
(312) 781-6630 - FAX
Barrish@litchfieldcavo.com
Stephenson@litchfieldcavo.com
**COUNSEL FOR BIRDS EYE**

Frank C. Woodside III
Mary-Jo Middelhoff Pullen
Daniel Jones
Dinsmore & Shohl, LLP
1900 Chemed Center
255 East Fifth Street, Ste. 1900
Cincinnati Ohio 45202
(513) 977-8200
(513) 977-8141 - FAX
frank.woodside@dinslaw.com
maryjo.middelhoff@dinslaw.com
daniel.jones@dinslaw.com
          and
Richard W. Pruett
Dennis H. Markusson
Markusson, Green & Jarvis, PC
999 18th Street, Suite 3300
Denver, CO 80202
(303) 572-4200
(303) 595-3780 - FAX
markusson@mgjlaw.com
pruett@mgjlaw.com
**COUNSEL FOR INTERNATIONAL**
**FLAVORS & FRAGRANCES, INC.**
**AND BUSH BOAKE ALLEN, INC.**

Philip B. Cardi
Andrew S. Ford
Jackson Kelly, PLLC
1099 18th Street, Suite 2150
Denver, CO 80202
(303) 390-0003
(303) 390-0177 - FAX
pcardi@jacksonkelly.com
asford@jacksonkelly.com
**COUNSEL FOR CARPET**
**TECHNOLOGIES, INC., n/k/a**
**CHEMICAL TECHNOLOGIES**
**INTERNATIONAL, INC.**

-16-

Karen H. Wheeler
Jesse O. Brant
Levy, Morse & Wheeler
6400 S. Fiddlers Green Circle, Suite 900
Englewood, CO 80111
(303) 796-2900
(303) 796-2081 - FAX
kwheeler@levymorsewheeler.com
jbrant@levymorsewheeler.com
**COUNSEL FOR THIRD PARTY DEFENDANT BRIDGEPOINT SYSTEMS, INC., d/b/a BRIDGEWATER, INC.**