## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.:  Civil Action No. 08-CV-00091-WDM-CBS

**WAYNE WATSON and MARY WATSON**

   **Plaintiffs,**

 v.

**DILLON COMPANIES, INC., d/b/a KING SOOPERS, also d/b/a INTER-AMERICAN-PRODUCTS, INC.,**

**INTER-AMERICAN PRODUCTS, INC.,**

**THE KROGER CO. D/B/A KING SOOPERS, ALSO D/B/A DILLON COMPANIES, INC., ALSO D/B/A INTER-AMERICAN PRODUCTS, INC.,**

**GILSTER-MARY LEE, CORP.**

**BIRDS EYE FOODS, INC., AND**

**JOHN DOE DEFENDANTS 9-20**

   **Defendants.**

---

## FOURTH AMENDED
## COMPLAINT AND DEMAND FOR TRIAL BY JURY

---

COME NOW Plaintiffs, and for their causes of action against Defendants Dillon Companies, Inc., d/b/a King Soopers, also d/b/a Inter-American-Products, Inc., Inter-American Products, Inc., The Kroger Co. d/b/a King Soopers, also d/b/a Dillon Companies, Inc., also d/b/a Inter-American Products, Inc., Birdseye Foods, Inc., Bush Boake Allen, Inc., Gilster-Mary Lee Corp., Flavor Concepts, Inc., FONA International, Inc., f/k/a Flavors of North America, Inc., Givaudan Flavors Corporation, International Flavors & Fragrances, Inc., Scisorek & Sons Flavors, Inc. and John Doe Defendants 9-20, state and allege the following:

## NATURE OF THE CASE

1.     Plaintiff Wayne Watson brings this action to recover for personal injuries suffered as a direct and proximate result of his use of (preparing and consuming) microwave popcorn designed, developed, manufactured, tested, packaged, promoted, marketed, distributed, labeled and/or sold by the various defendants named herein, and his exposure to dangerous butter flavoring products as a direct result of that use and his resulting serious and permanent lung illness and disease.

2.     Plaintiff Mary Watson is Wayne Watson's spouse and brings this action for her loss of consortium as a direct and proximate result of Wayne Watson's illness and disease.

3.     Plaintiffs seek judgment against the defendants for compensatory and punitive damages caused by defendants' malicious, reckless, and/or negligent design, development, manufacture, testing, packaging, promotion, marketing, distribution, labeling and/or sale of defective microwave popcorn, including natural and artificial butter flavorings and defendants' failure to warn of the dangers thereto.

## JURISDICTION AND VENUE

4.     Jurisdiction exists pursuant to 28 U.S.C. § 1332.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a).

5.     The amount in controversy, exclusive of interest and costs, exceeds Seventy-Five Thousand Dollars ($75,000.00).

6.     The Plaintiffs reside at 7585 S. Cove Circle, Centennial, Arapahoe County, Colorado, 80122.

2

7.      Defendant Dillon Companies, Inc., is a Kansas corporation, d/b/a King Soopers, whose principal place of business is 2800 E 4th St., Hutchinson, Kansas 67501 and at all times material hereto conducted business in Colorado at 7575 S. University Blvd. Centennial, Colorado 80122 as "King Soopers." On information and belief, Defendant Inter-American Products, Inc., was and/or is, at all or some of the times material hereto, a wholly owned subsidiary of Dillon Companies, Inc. On information and belief, Dillon Companies, Inc. is wholly owned by Defendant The Kroger Co.   Dillon Companies, Inc., may be served at Corporation Service Company, 1560 Broadway, Ste. 2090, Denver, Colorado 80202.

8.      Defendant Inter-American Products, Inc., is an Ohio corporation whose principal place of business is 1014 Vine St., Cincinnati, Ohio 45202.   On information and belief, Inter-American Products, Inc. is wholly owned by Defendant The Kroger Co.  Defendant Inter-American Products, Inc. designs, develops, manufactures, tests, packages, promotes, markets, distributes, labels and sells microwave popcorn, including specifically microwave popcorn containing dangerous butter flavoring products sold under the brand names or label "First Choice" and "Kroger" to consumers in the State of Colorado including Plaintiff Wayne Watson.  Inter-American Products, Inc. may be served at CSC Lawyers Incorporating Service (Corporation Service Company) 50 W. Broad St., Suite 1800, Columbus, Ohio 43215.

9.      Defendant The Kroger Co. ("Kroger") is an Ohio corporation whose principal place of business is 1014 Vine Street, Cincinnati, Ohio 45202 and at all times material hereto conducted business at 7575 S. University Blvd., Centennial, Colorado 80122 as a "supermarket" under the name   "King Soopers" at which Plaintiff Wayne Watson regularly shopped and purchased microwave popcorn containing dangerous butter flavoring products. As more fully described below,

3

on information and belief Defendant The Kroger Co. is the sole owner of Inter-American Products, Inc., and of Dillon Companies, Inc. The Kroger Co. may be served at Corporation Service Company, 1560 Broadway, St. 2090, Denver, Colorado, 80202.

10.     Defendant Gilster-Mary Lee is a Missouri corporation whose principal place of business is also in Missouri.

11.     Defendant Birds Eye Foods, Inc. (Birdseye) is a Delaware corporation whose principal place of business is located in Rochester, New York.

12.     Defendant Bush Boake Allen, Inc. (BBA) is a Virginia corporation whose principal place of business is 521 W. 57th St. New York, New York 10019.

13.     Defendant International Flavors & Fragrances, Inc. (IFF) is a New York corporation whose principal place of business is 521 W. 57th St. New York, New York 10019.

14.     Defendant Flavor Concepts, Inc. is an Illinois corporation principally located in Chicago, Illinois.

15.     Defendant FONA is a flavor manufacturer that used chemicals, including diacetyl, to manufacture food and beverage flavorings. Upon information and belief, FONA manufactured the flavorings used and/or sold and distributed by Defendant Flavor Concepts, Inc.

16.     Defendant Givaudan Flavors Corporation is a Delaware corporation principally located in Cincinnati, Ohio.

17.     Defendant Scisorek & Sons Flavors, Inc. is a California corporation principally located in California.

18.     Gilster-Mary Lee Corporation designed and manufactured microwave popcorn containing butter flavorings for the Kroger defendants which was packaged carrying the brand name

4

or label of "Kroger" and "First Choice Butter Popcorn" and also "First Choice Movie Theater Butter Popcorn" which were purchased by Plaintiffs and used by Plaintiff Wayne Watson.

19.     First Choice Butter Popcorn was made between September 2000 and July 2004 at the Gilster Mary Lee plant in Jasper, Missouri.

20.     First Choice Butter Popcorn contained flavors which were designed and manufactured for and sold to Gilster-Mary Lee Corporation.  The product contained flavors 1927 and 1913 which were provided by defendant Scisorek & Sons Flavors, Inc. and 1917 which was provided defendants Bush Boake Allen, Inc. and International Flavors & Fragrances, Inc. until February 2003 and by Flavor Concepts after March 2003.

21.     First Choice Movie Theater Butter Popcorn was made between August 2004 and the present at the Gilster Mary Lee plant in McBride, Missouri.

22.     First Choice Movie Theater Butter Popcorn contained flavors which were designed and manufactured for and sold to Gilster-Mary Lee Corporation.  The product contained flavors 19048 which was provided by Defendant Givaudan Flavors Corporation and flavor 1915 which was provided by defendant Flavor Concepts.

23.     Birds Eye designed and manufactured microwave popcorn containing butter flavorings for the Kroger defendants which was packaged carrying the brand name or label of First Choice and Kroger which were purchased by Plaintiffs and used by Plaintiff Wayne Watson.  The Birds Eye's microwave popcorn contained diacetyl.

24.     At all times pertinent, the true names and addresses of John Doe Defendants 9 - 20 have been and remain unknown despite Plaintiffs' attempts to discover their names and addresses. It is known that the John Doe Defendants are individuals, partnerships and/or corporations who are

5

or were engaged in the business of designing, manufacturing, and/or selling microwave popcorn, butter flavoring used in such microwave popcorn and flavoring chemicals used in that butter flavoring to which Plaintiff Wayne Watson was exposed.

## GENERAL ALLEGATIONS

25.     Whenever reference in this Complaint is made to any act or transaction by a defendant, such allegation shall be deemed to mean that the principals, officers, directors, employees, agents and/or representatives of such defendant committed, knew of, performed, authorized, ratified and/or directed such act or transaction on behalf of such defendant while actively engaged in the scope of his or her duties.

26.     At all pertinent times, the defendants designed, developed, manufactured, tested, packaged, promoted, marketed, distributed, labeled and/or sold microwave popcorn containing natural and/or butter flavorings. The microwave popcorn containing butter flavor was intended by Defendants to have a butter aroma and taste.

27.     Defendants' microwave popcorn containing natural and butter flavorings contained, at all times material hereto, the compound diacetyl and other compounds that volatilize during the preparation and use of the oil and flavor mixture during the microwave popcorn packaging process and during the preparation of the popcorn by consumers by cooking the popcorn in a microwave oven.

28.     Exposure to these flavoring compounds causes damage to the respiratory system in the form of asthma, bronchiectasis, bronchiolitis obliterans, chronic bronchiolitis, chronic obstructive bronchitis, chronic cough, chronic obstructive pulmonary disease, emphysema, fatigue, obstructive

spirometry abnormalities, severe lung impairment, shortness of breath and/or other respiratory illnesses and diseases.

29.    The defendants knew or should have known of the hazardous nature of their natural and artificial butter flavorings and microwave popcorn containing them at the time of sale and while Plaintiff Wayne Watson purchased, prepared and consumed their products. Defendants, and each of them, failed to warn that preparing microwave popcorn in a microwave oven as intended and smelling the buttery aroma could expose the consumer to an inhalation hazard and a risk of lung injury. All defendants failed to give instructions regarding the safe use of and necessity of precautions around, microwave popcorn and butter flavoring. As a direct result of this failure to warn and failure to give proper instructions, Plaintiff Wayne Watson did not know of or appreciate the hazard posed by microwave popcorn with butter flavoring.

30.    Beginning in or around 2001 and continuing into 2007, Plaintiff Wayne Watson regularly purchased microwave popcorn from "King Soopers" located at 7575 S. University Blvd., Centennial, Colorado 80122, including specifically, but not limited to, microwave popcorn sold under the label "Kroger" and "First Choice" with Butter flavoring or "First Choice Movie Theater" Butter flavoring. Wayne Watson regularly ate two to three bags of microwave popcorn each day during this time period.

31.    In the course of cooking the microwave popcorn in his microwave and preparing to eat it, Plaintiff Wayne Watson was exposed to the butter flavoring as it became heated and vaporized.

32.    Plaintiff Wayne Watson's exposure to defendants' popcorn and natural and artificial butter flavorings directly and proximately caused personal injury, i.e., the development of sustained,

7

severe, permanent, and/or progressive damage to the lungs, severe damage to the respiratory system, and/or impairment of the ability to function, including, but not limited to: bronchiolitis obliterans; severe and progressive damage to the respiratory system, extreme shortness of breath and reduced life expectancy. Plaintiff Wayne Watson has further suffered, and will suffer in the future, pain, discomfort, fear, anxiety, loss of sleep and other mental and emotional distress directly and proximately caused by the conduct of the defendants.

33.     As a direct and proximate result of the conduct of the defendants, Plaintiffs have incurred and will incur in the future, liability for physicians, surgeons, nurses, hospitals, x-rays and other medical treatment, the true and exact amount thereof being unknown to the Plaintiffs at this time. Plaintiffs therefore request leave to amend this Complaint accordingly when the true and exact cost of these damages is ascertained.

34.     As a further direct and proximate result of the stated conduct of the defendants, Plaintiffs have incurred and will incur loss of income, wages, profits and commissions, a diminishment of earning potential and other pecuniary losses, the full nature and extent of which are not yet known to the Plaintiffs, and leave is also requested to amend this Complaint to conform to proof of these damages at the time of trial.

## COUNT I
### (Negligence)

35.     Plaintiffs repeat and re-allege the allegations contained in paragraphs 1-34 of this Complaint as if fully set forth above.

36.     Defendants designed, developed, manufactured, tested, packaged, promoted, marketed, distributed, labeled and/or sold microwave popcorn and/or their butter flavorings and

8

ingredients intended to be cooked in a microwave oven, to be tasted and to have a pleasant aroma or smell.

37.     Defendants Kroger, Inter-American Products, Dillon, Gilster-Mary Lee Corporation, Birds Eye and John Doe Defendants 9-20's microwave popcorn contained butter flavoring including flavoring ingredients which, when used as intended, were highly likely to be a substantial contributing factor in causing the following human illnesses, injuries and conditions:

   a.  bronchiolitis obliterans,

   b.  respiratory disease,

   c.  severe impairment of lung function, and

   d.  other types of diseases and injuries associated with butter flavorings and their constituents.

38.     Defendants Bush Boake Allen, Inc., Flavor Concepts, Inc., Givaudan Flavors Corporation, International Flavors & Fragrances, Inc., Scisorek & Sons Flavors, Inc. and John Doe 8-20's butter flavoring products, when used as intended, were highly likely to be a substantial contributing factor in causing the following human illnesses, injuries and conditions:

   a.  bronchiolitis obliterans,

   b.  respiratory disease,

   c.  severe impairment of lung function, and

   d.  other types of diseases and injuries associated with butter flavorings and their constituents.

39.     At all times material, the ordinary consumer, including Plaintiff Wayne Watson, did not know of the likelihood of, the severity of, or the extent of the risks from defendants' butter flavorings.

40.     Defendants at all times material had and breached the following legal duties to consumers including Plaintiff Wayne Watson:

a.     the duty to warn all foreseeable users, including consumers, of defendants' butter flavoring products of the likelihood, probability and/or foreseeability that the harms listed herein would or might occur if the products were used as intended;

b.     the duty to acquire, maintain and apply the best scientific knowledge available in the field of microwave popcorn and butter flavor design, development, manufacture, testing, packaging promotion, marketing, distribution, labeling and/or sale of microwave popcorn and/or their butter flavorings;

c.     the duty to test, design, manufacture and sell microwave popcorn and butter flavorings that when used as intended were reasonably safe for all foreseeable users and consumers such as Plaintiff Wayne Watson;

d.     the duty to make feasible improvements in design, composition, or manufacture of microwave popcorn, and specifically the butter flavorings that would eliminate or decrease the risk to users and consumers such as Plaintiff Wayne Watson from an inhalation hazard;

10

e.      the duty to disclose to all foreseeable users and consumers the results of their own scientific research and other scientific research known to them indicating that the use of microwave popcorn and butter flavorings and/or their constituents cause serious risks of harm;

f.      the duty to warn all foreseeable users and consumers of the known dangers of microwave popcorn, butter flavorings and/or their constituents;

g.      the continuing duty to warn all foreseeable users and consumers of their microwave popcorn and butter flavoring products concerning defects of which the defendants acquired knowledge after the product was manufactured or sold;

h.      the duty to provide the post-marketing warning or instruction that a manufacturer and/or seller exercising reasonable care would have provided concerning the risk, in light of the likelihood that the products would cause consumers such as Plaintiff Wayne Watson injuries and in light of the likely seriousness of these injuries;

i.      the duty to exercise due care and the ordinary, reasonable and technical skill and competence that is required of designers, manufacturers, processors, distributors, marketers, sellers, suppliers, and others in a similar situation, including, without limitation: the duty to test their food products and food flavors and ingredients, the duty to acquire and maintain the knowledge of an expert to design, manufacture, process, distribute, market, sell, and/or supply their products free from defects and/or latent defects, and the duty to

11

adequately warn of product defects and/or hazards, which duty continued even after the sale of said products.

41.    As a direct and proximate result of defendants' negligence, Plaintiff Wayne Watson has suffered damages as more specifically set forth above.

42.    The conduct of Defendant Gilster-Mary Lee Corp., as alleged herein was willful, wanton, malicious and/or in reckless disregard for the rights of Colorado residents, including the Plaintiffs, and punitive and exemplary damages should be assessed against it.

WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory and punitive and exemplary damages (as to Defendant Gilster-Mary Lee), together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

## COUNT II
### Strict Liability in Tort -- Design Defect

43.    Plaintiffs repeat and re-allege the allegations contained in paragraphs 1-42 as if fully set forth hereunder.

44.    The defendants Kroger, Inter-American Products, Dillon, Gilster-Mary Lee Corporation and Birds Eye manufactured, sold and/or distributed or otherwise placed into the stream of commerce microwave popcorn containing butter flavoring products and other products containing diacetyl within the ordinary course of their businesses.

45.    The defendants Bush Boake Allen, Inc., Flavor Concepts, Inc., Givaudan Flavors Corporation, International Flavors & Fragrances, Inc. and Scisorek & Sons Flavors, Inc. manufactured, sold and/or distributed or otherwise placed into the stream of commerce butter flavoring products containing diacetyl within the ordinary course of their businesses. The John Doe

defendants 9-20 manufactured, sold and distributed or otherwise placed into the stream of commerce butter flavoring products and ingredients for same within the ordinary course of their businesses.

46.     When Plaintiff Wayne Watson was exposed to the Defendants' products:

    a.     said food and flavor products were more dangerous than an ordinary consumer would expect when used in an intended or reasonably foreseeable manner, and/or

    b.     the foreseeable risks associated with the design or formulation of the food and flavor products exceeded the benefits associated with their design or formulation, in that:

        i.     the nature and magnitude of the risks of harm associated with the design or formulation of said products, in light of the intended and reasonably foreseeable uses, modifications and alterations of said products, outweighed the intended or actual utility of said designs and formulations;

        ii.     consumers, including Plaintiff Wayne Watson would not likely be aware, whether based on warnings, general knowledge or otherwise of the risks of harm;

        iii.     it was likely that the design or formulation of the defendants' microwave popcorn containing natural and artificial butter flavorings and other products containing diacetyl would cause harm in light of their intended and reasonably foreseeable uses, modifications and alterations;

13

       iv.    there was no performance or safety advantages associated with the design or formulation of defendants' products; and

       v.    Defendants possessed both the technical and economic feasibility of using an alternative design or formulation when the products left the control of Defendants.

47.    Plaintiff Wayne Watson used, smelled and inhaled the butter aroma and vapors and also ate defendants' food and flavor products in an intended and reasonably foreseeable manner.

48.    At the time of the design, development, manufacture, testing, packaging, promotion, marketing, distribution, labeling and/or sale of the defendants' popcorn and popcorn flavor products, said products were defective as designed when put to the use anticipated by the defendants as a result, among other things, of their butter flavorings and other products containing diacetyl and other compounds having the propensity to cause damage to the respiratory system in the form of asthma, bronchiectasis, bronchiolitis obliterans, chronic bronchiolitis, chronic obstructive bronchitis, chronic cough, chronic obstructive pulmonary disease, emphysema, fatigue, obstructive spirometry abnormalities, severe lung impairment, shortness of breath and other respiratory illnesses.

49.    As a result of said defendants' food and flavor products' propensity to cause respiratory disease as described above, the Defendants' products were unreasonably dangerous and defective when put to the intended and reasonably foreseeable use anticipated by the defendants.

50.    Plaintiffs' harm was not caused by an inherent characteristic of Defendants' products which is a generic aspect of their products that cannot be eliminated without substantially compromising the products' usefulness or desirability and which is recognized by the ordinary person with the ordinary knowledge common to the community.

51.     A practical and technically feasible alternative design or formulation was available for Defendants' products that would have prevented the harm to Plaintiffs without substantially impairing the usefulness or intended purpose of Defendants' products.

52.     As a direct and proximate result of the dangerous and defective condition of the Defendants' products and the defendants' failure to warn of the dangers thereof, Plaintiff Wayne Watson has developed severe, permanent, and progressive damage to the lungs, severe damage to the respiratory system, and/or impairment of the ability to function.  Plaintiffs have suffered and continue to suffer damages including, but not limited to, physical pain, loss of consortium, mental and emotional distress, loss of enjoyment of life, loss of ability to function as a whole person, permanent impairment, and/or loss of sleep and natural rest.  In addition, Plaintiffs have suffered and will suffer loss of wages and/or earning capacity, and have expended and will expend money for medical treatment, medication, medical monitoring and/or medical devices.

53.     The conduct of Defendant Gilster-Mary Lee Corp., as alleged herein was willful, wanton, malicious and/or in reckless disregard for the rights of Colorado residents, including the Plaintiffs, and punitive and exemplary damages should be assessed against it.

WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory and punitive and exemplary damages (as to Defendant Gilster-Mary Lee), together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

## COUNT III
### Failure to Warn

54.     Plaintiffs repeat and re-allege the allegations contained in paragraphs 1-49 as if fully set forth hereunder.

15

55.     The defendants designed, developed, manufactured, tested, packaged, promoted, marketed, distributed, supplied, and labeled/sold their microwave popcorn containing butter flavorings and/or the butter flavoring products without adequate instructions on their safe use to reduce and/or eliminate exposure thereto, and/or without warnings that the products contained substances that are dangerous to health and life and cause severe respiratory diseases.

56.     Defendants knew or in the exercise of reasonable care should have known about the health risks associated with exposure to the butter flavoring products contained in microwave popcorn.

57.     Defendants failed to provide the post-marketing warning or instruction that a manufacturer/supplier/distributor/seller exercising reasonable care would have provided concerning the risk, in light of the likelihood that the products would cause consumers, including Plaintiff Wayne Watson, injuries and in light of the likely seriousness of these injuries.

58.     The health risks associated with defendants' popcorn and food flavoring products were not open and obvious or of a type that is a matter of common knowledge.

59.     As a result of said defendants' failure to adequately instruct and warn of the dangerous characteristics of their products, said products were defective and unreasonably dangerous when put to the use reasonably anticipated by the Defendants.

60.     As a direct and proximate result of the dangerous and defective condition of the Defendants' products and the Defendants' failure to warn of the dangers thereof, Plaintiff Wayne Watson has developed severe, permanent, and progressive damage to the lungs, severe damage to the respiratory system, and/or impairment of the ability to function. Plaintiffs have suffered and continue to suffer damages including, but not limited to physical pain, loss of consortium, mental

16

and emotional distress, loss of enjoyment of life, loss of ability to function as a whole person, permanent impairment, and/or loss of sleep and natural rest. In addition, Plaintiffs have suffered and will suffer loss of wages and/or earning capacity and have expended and will expend money for medical treatment, medication, medical monitoring and/or medical devices.

61.     The conduct of Defendant Gilster-Mary Lee Corp., as alleged herein was willful, wanton, malicious and/or in reckless disregard for the rights of Colorado residents, including the Plaintiffs, and punitive and exemplary damages should be assessed against it.

WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory and punitive and exemplary damages (as to Defendant Gilster-Mary Lee), together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

### COUNT IV
### VIOLATION OF COLORADO UNIFORM DECEPTIVE TRADE PRACTICES ACT
### (Colo. Rev. Stat. Sec. 6-1-105)

62.     Plaintiffs repeat and re-allege the allegations contained in paragraphs 1-61 as if fully set forth hereunder.

63.     Defendants Kroger, Inter-American, Dillon, Gilster-Mary Lee Corporation, Birds Eye and John Doe 9-20 are designers, manufacturers, promoters, marketers, developers, sellers and/or distributors of microwave popcorn including specifically microwave popcorn sold under the label/brand "First Choice."

64.     Defendants Bush Boake Allen, Inc., Flavor Concepts, Inc., Givaudan Flavors Corporation, International Flavors & Fragrances, Inc., Scisorek & Sons Flavors, Inc. and John Doe

17

8-20 are designers,  manufacturers and/or sellers of butter flavoring created with the intent that they be used in microwave popcorn sold for use by consumers such as Plaintiffs.

65.     Defendants Kroger, Inter-American, Dillon, Gilster-Mary Lee Corporation and Birds Eye and John Doe 9-20 knew or should have known that microwave popcorn containing butter flavoring products, including diacetyl, was unreasonably dangerous and defective and had a propensity to cause serious and potentially life-threatening side effects.  Notwithstanding the foregoing, Defendants Kroger, Inter-American, Dillon,  Gilster-Mary Lee Corporation , Birds Eye and John Doe 9-20 omitted material facts concerning the use of and safety of microwave popcorn containing butter flavoring in the statements made to consumers such as Plaintiff Wayne Watson and the general public.

66.     Defendants Bush Boake Allen, Inc., Flavor Concepts, Inc., Givaudan Flavors Corporation, International Flavors & Fragrances, Inc., Scisorek & Sons Flavors, Inc. and John Doe 8-20 knew or should have known that microwave popcorn containing butter flavoring products, including diacetyl, was unreasonably dangerous and defective and had a propensity to cause serious and potentially life-threatening side effects. Notwithstanding the foregoing, Defendants Bush Boake Allen, Inc., Flavor Concepts, Inc., Givaudan Flavors Corporation, International Flavors & Fragrances, Inc., Scisorek & Sons Flavors, Inc. and John Doe 9-20 omitted material facts concerning the use of and safety of microwave popcorn containing butter flavoring in the statements made to consumers such as Plaintiff Wayne Watson and the general public.

67.     Defendants, and each of them have violated the Colorado Uniform Deceptive Trade Practice Act Sec. 6-1-105.  Defendants used deception, fraud, false promise, misrepresentation

and/or unfair practices in their packaging, labeling, distributing, marketing, promoting and selling of microwave popcorn with butter flavoring in the State of Colorado.

68.     Defendants' practices of promoting, marketing and labeling microwave popcorn with butter flavoring and/or of marketing and labeling butter flavoring created and/or reinforced a false impression as to its safety and placed all consumers of such microwave popcorn at risk for serious injury and potentially death. Defendants' statements and/or omissions were made with the intent that Plaintiff Wayne Watson would rely on such statements and/or omissions.

69.     Plaintiff Wayne Watson purchased, prepared and consumed microwave popcorn including specifically "Kroger" and "First Choice" microwave popcorn with butter flavoring or movie theater butter for personal purposes and suffered an ascertainable loss of money as a result of Defendants' use or employment of the unlawful methods, acts or practices described and alleged herein.

70.     As a direct and proximate result of Defendants unlawful practices alleged herein, Plaintiffs have suffered ascertainable loss, i.e., economic loss that includes the purchase of the microwave popcorn despite it being unfit for use by a consumer and additional out-of-pocket healthcare related costs, for which Defendants are liable to Plaintiffs.

71.     The conduct of Defendant Gilster-Mary Lee Corp., as alleged herein was willful, wanton, malicious and/or in reckless disregard for the rights of Colorado residents, including the Plaintiffs, and punitive and exemplary damages should be assessed against it.

WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory and punitive and exemplary damages (as to Defendant Gilster-Mary Lee), together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

## COUNT V
### (Loss of Consortium and Claim for Medical Expenses)
### (Plaintiff Mary Watson)

72.     Plaintiffs repeat and re-allege the allegations contained in paragraphs 1-71 as if fully set forth hereunder.

73.     As a direct result of the aforementioned conduct of defendants more fully described in Counts I, II, III and IV, Plaintiff Mary Watson sustained loss of her spouse's consortium, society, companionship, comfort, protection, care, attention, advice and counsel, and guidance; loss of her spouse's financial support, loss of her spouse's services, and has incurred medical and medical monitoring expenses which will continue to be incurred in the future.

74.     The conduct of Defendant Gilster-Mary Lee Corp., as alleged herein was willful, wanton, malicious and/or in reckless disregard for the rights of Colorado residents, including the Plaintiffs, and punitive and exemplary damages should be assessed against it.

WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory and punitive and exemplary damages (as to Defendant Gilster-Mary Lee), together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

### Demand for Trial by Jury

75.     Plaintiffs demand a trial by jury on all issues in this matter.

20

Respectfully Submitted,


/s/ Andrew K. Smith
HUMPHREY, FARRINGTON & McCLAIN, P.C.
Kenneth B. McClain        MO# 32430
Steven E. Crick          MO# 32654
Scott A. Britton-Mehlisch   MO#36761
Andrew K. Smith         NE# 22480
221 West Lexington, Suite 400
Independence, Missouri 64051
Telephone:  (816) 836-5050
Facsimile:   (816) 836-8966

ATTORNEYS FOR PLAINTIFFS

21

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above-foregoing document was served on August 19, 2010 via electronic mail and the Court 's ECF system to the following counsel of record:

/s/ Andrew K. Smith
ATTORNEY FOR PLAINTIFFS

| | |
|---|---|
| Jason D. Melichar | jmelichar@nldhlaw.com |
| Bruce A. Menk | menkb@hallevans.com |
| Darin J. Lang | langd@hallevans.com |
| Kenneth J. Barrish | Barrish@litchfieldcavo.com |
| Scott D. Stevenson | Stephenson@litchfieldcavo.com |
| Philip B. Cardi | pcardi@jacksonkelly.com |
| Andrew S. Ford | asford@jacksonkelly.com |
| Timothy M. Schulte | tschulte@jacksonkelly.com |
| Karen H. Wheeler | kwheeler@levymorsewheeler.com |
| Jesse O. Brant | jbrant@levymorsewheeler.com |