IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No.   08-cv-00091-WYD-CBS

WAYNE WATSON and
MARY WATSON,

      Plaintiffs,

v.

DILLON COMPANIES, INC., d/b/a
KING SOOPERS, also d/b/a
INTER-AMERICAN PRODUCTS, INC., et al.,

      Defendants.

---

## ORDER

---

I.    <u>INTRODUCTION AND RELEVANT BACKGROUND</u>

THIS MATTER came before the Court for a supplemental *Daubert* hearing held on

April 18, 2012.   On May 12, 2012, Defendants submitted a supplemental brief to the

Court, and on May 16, 2012, Plaintiff filed a response.   For reasons stated on the record

at the hearing and set forth below, I deny Defendants' supplemental Fed. R. Evid. 702

and *Daubert* challenge of Dr. Cecile Rose.

By way of background, on August 2, 2011, this matter was transferred to me from

District Judge Walker D. Miller, who assumed inactive senior judge status.   Prior to the

transfer, on June 14-15, 2011, Judge Miller convened a lengthy hearing on Defendants'

various motions to exclude the expert testimony of Plaintiff's expert witnesses: (1) Allen

Parmet, M.D.; (2) David Egilman, M.D.; and (3) Cecile Rose, M.D.[1]   After two days of

hearing testimony from the expert witnesses, Judge Miller issued an order on June 22,

2011 denying the motions to exclude except a small portion of Dr. Egilman's opinions.

(Order, ECF. No. 652).[2]   However, since Defendants were not afforded the opportunity

to cross examine Dr. Rose at the hearing, Judge Miller denied Defendants' motion to

exclude her testimony without prejudice.   Judge Miller further granted the Defendants

leave to refile their motion and request a future hearing should they deem it necessary to

cross examine Dr. Rose in person.   (Order, ECF No. 652).

Following the transfer of this action to me, in addition to holding several status

conferences, on October 26, 2011, I entered an Amended Final Pretrial Order.   As part of

these status conferences, the Defendants indicated their desire to cross examine Dr.

Rose at a supplemental *Daubert* hearing.   Accordingly, pursuant to Judge Miller's order

and after a careful review of the record, I granted Defendants' request for a supplemental

*Daubert* hearing, which was held on April 18, 2012.[3]

At the April 18, 2012 hearing, Defendants cross examined Dr. Rose about her

expert opinions in her capacity as Plaintiff's treating physician.   Dr. Rose opined that

Plaintiff suffered from a rare lung disease, bronchiolitis obliterans, caused by the

chemical diacetyl, which was commonly used in butter flavored microwave popcorn.

She based her opinion on Plaintiff's history of eating multiple bags of butter flavored

---

[1]   I note that Dr. Rose was unable to appear at the initial hearing, thus, Judge Miller received her video deposition testimony.

[2]   Included in Judge Miller's order is an extensive recitation of the pertinent facts and background of this case.   The order is incorporated by reference herein.

[3]   I set a supplemental *Daubert* hearing for April 18, 2012 and ordered to the parties to file appropriate briefing specifying the new issues to be addressed.

microwave popcorn on a daily basis along with various clinical findings including a review of Plaintiff's medical history, pulmonary function testing, CT scans of Plaintiff's chest, a surgical lung biopsy, as well as the progression of Plaintiff's disease.   In response to my specific questioning at the April 18, 2012 hearing, Dr. Rose unequivocally stated that she did not rely on the results of any testing conducted at Plaintiff's home with respect to the measurement of diacetyl levels.   "I made the diagnosis of Mr. Watson's condition and the causal link to his use of microwave popcorn without any measurement in his home." (Hr'g Tr. 63, April 18, 2012).

Also at the hearing, I made the following statements:

> Now, Judge Miller -- and I read this earlier – gave very cogent, clear opinions that affirmed her [Dr. Rose's] methodology.   And what he also said as a part of his opinion -- let me find it here.   He says on page 34, "There is no requirement that a medical expert be 100 percent certain as to a diagnosis or cause.   And Dr. Rose has stated her opinion to a reasonable degree of medical probability."   So her opinions stated to a reasonable degree of medical probability are opinions that can come in at trial, subject to vigorous cross-examination, based on Judge Miller's prior order.   And I see nothing in what I've heard today to change that.

(Hr'g Tr. 95-96, April 18, 2012).   Based on my review of the record, relevant authority, and the recent briefing submitted by the parties, I agree with and reaffirm Judge Miller's previous order denying Defendants' Rule 702 and *Daubert* challenge as to Dr. Cecile Rose.

## II.   DISCUSSION

The admission of expert witness testimony is governed by Fed. R. Evid. 702 and provides for a liberal standard of admission.   *United States v. Gomez*, 67 F.3d 1515,

1526 (10th Cir. 1995).   Before admitting the testimony of an expert witness, the trial judge must play a gate-keeping function to ensure the testimony is both relevant and reliable.   *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993).   On both December 1, 2000 and December 1, 2011, Rule 702 was amended to incorporate the *Daubert* holding and states the proponent of the expert testimony must show: (1) the expert's scientific, technical or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (2) the testimony is based on sufficient facts or data; (3) the testimony is the product of reliable principles and methods; and (4) the expert has applied the principles and methods reliably to the facts of the case. Fed. R. Evid. 702.[4]

However, "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system."   *United States v. Nacchio*, 555 F.3d 1234, 1280 (10th Cir. 2009) (internal citations omitted).   "Instead, vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."   *Id.* (citing *Daubert*, 509 U.S. at 595).   Thus, "the general rule of liberal admission of proper evidence is retained.   The role of the district court is that of a gatekeeper, a tender or monitor who liberally allows the entrance of proper evidence; it is not a portcullis, excluding qualified patrons for indeterminate reasons."   *Id.*

The party offering expert testimony has the burden of establishing its admissibility pursuant to Fed. R. Evid. 702.   *Id.* at 1244.   The proponent is not required to

---

[4]   To be reliable under *Daubert*, an expert must possess a higher degree of knowledge, skill, training, experience or education than the average person.   Fed. R. Evid. 702.

demonstrate that the testimony is correct, only that the expert witness is qualified and that the testimony is relevant and reliable.   *See Bitler v. A.O. Smith Corp.*, 391 F.3d 1114, 1120 (10th Cir. 2004).   Nor is it the Court's role to "declare or even know with any degree of certainty whether otherwise admissible expert testimony is, in fact, correct."   *Goebel v. Denver and Rio Grande Western R. Co.*, 346 F.3d 987, 994 (10th Cir. 2003).

Here, the question of whether diacetyl played any part in causing Plaintiff's lung disease presents a complex medical situation with complex medical theories.   The Tenth Circuit has held that, even in more complicated cases when an examining physician calls upon training and experience to offer a differential diagnosis (a determination of which one of two or more diseases, presenting with similar symptoms, has caused a patient's ailments), there is likely no valid *Daubert* challenge.   *See Bitler*, 391 F.3d at 1123 (citing cases that hold that a qualified doctor's differential diagnosis of a patient is sufficiently reliable for Rule 702 and *Daubert* purposes).

In this matter, Dr. Rose testified about her diagnosis of a rare lung disease on a patient she had examined and treated.   This diagnosis relates to a condition within Dr. Rose's particular expertise.   I find that these factors support Plaintiff's position that Dr. Rose's training and experience place her testimony within the requirements of Rule 702 and *Daubert*.

Importantly, I also note that unlike retained expert witnesses who base their opinions on knowledge acquired in anticipation of litigation, "[a] treating physician's testimony is based on the physician's personal knowledge of the examination, diagnosis and treatment of the patient and not from outside sources."   *Mangla v. Univ. of*

*Rochester*, 168 F.R.D. 137, 139 (W.D.N.Y. 1996).   In fact, numerous courts have

recognized that a treating physician often forms an opinion as to the cause of an injury in

the future based upon his or her examination of a patient.   *See Id.* (forming such opinions

is "a necessary part of the treatment of the patient"); *Salas v. United States*, 165 F.R.D.

31, 33 (W.D.N.Y. 1995) (holding that "[a]s a general rule, a treating physician considers

not just the plaintiff's diagnosis and prognosis, but also the cause of the plaintiff's injuries.

. . .   Accordingly, questioning these physicians as to whether the injuries for which [the

physician] treated the plaintiff can be causally related to the accident would appear to be

within the scope of the patient's care and treatment."); *Baker v. Taco Bell Corp.*, 163

F.R.D. 348, 349 (D.Colo. 1995) (holding that "[t]hese opinions are a necessary part of the

treatment of the patient.").

Consequently, treating physicians have been permitted to testify as to the cause of

an injury because determining causation is an integral part of providing treatment.   *See*

*Fielden v. CSX Transp., Inc.*, 482 F.3d 866, 870 (6th Cir. 2007) (stating "[t]his conclusion

is supported by the obvious fact that doctors may need to determine the cause of an injury

in order to treat it"); *Starling v. Union Pacific*, 203 F.R.D. 468, 479 (D.Kan. 2001)

(recognizing "the prevailing weight of authority today is that, to the limited extent that

opinions about the cause of an injury are a necessary part of a patient's treatment,

treating physicians may opine on causation"); *Washington v. Arapahoe County Dep't of*

*Social Servs.*, 197 F.R.D. 439, 442 (D.Colo. 2000); *Prater v. Consol. R. Corp.*,

272 F. Supp. 2d 706, 712 (N.D.Ohio 2003).   Based on the cited authority and record in

this matter, I find that as Plaintiff's treating physician, Dr. Rose may testify as to her

opinion regarding the cause of Plaintiff's lung disease.

I also note that at the April 18, 2012 hearing, Defendants initially argued that Dr. Rose's opinions should be excluded because they were based on unreliable scientific testing conducted in Plaintiff's home.   However, when Dr. Rose testified that she did not rely on any such scientific testing in forming her opinions, Defendants reversed their position and are now arguing that Dr. Rose's testimony should be excluded because it is not based on any scientific testing.   I disagree and find that Defendants' new argument is unsupported by the evidence and controlling case law.   Dr. Rose testified that she used differential diagnosis in forming her opinions as to the cause of Plaintiff's lung disease. As Judge Miller previously found in his thorough, written order,

> the Tenth Circuit has recognized that a medical expert does not always have to cite to published studies on general causation in order to establish causation and, under the right circumstances, a differential diagnosis (i.e., ruling out other possible causes of the condition) may reliably form the basis of an opinion that a particular item caused an injury. *Hollander v. Sandoz Pharm. Corp.*, 289 F.3d 1193, 1211-12 (10th Cir. 2002) (quoting *Turner v. Iowa Fire Equip. Co.*, 229 F.3d 1202, 1209 (8th Cir. 2000)).   "The first several victims of a new toxic tort should not be barred from having their day in court simply because the medical literature, which will eventually show the connection between the victims' condition and the toxic substance, has not yet been completed."   *Turner*, 229 F.3d at 1209.   Dr. Egilman and Dr. Rose have both discussed why they believe that other known causes of bronchiolitis obliterans have been eliminated, leaving Mr. Watson's exposure to butter flavoring vapors as the most plausible explanation.

(Order at 24, ECF No. 652).   Moreover, Dr. Rose testified as to her extensive experience with the chemical diacetyl as a potential cause of lung problems "in part related to just my work as a pulmonary and occupational medicine physician, but also I had been working

on behalf of National Jewish Health as a consultant to" companies who manufacture butter flavor chemicals.   (Hr'g Tr. at 34-35, April 18, 2012).

Defendants also highlight several other reasons why a fact finder should distrust Dr. Rose's opinions, such as her alleged failure to consider all the potential causes of Plaintiff's lung disease and the fact that she did not review some of Plaintiff's prior medical records.   However, I find that these factors go to the weight to be accorded to her testimony, not to its admissibility.   As such, cross-examination, the presentation of contrary evidence, and careful instructions on the burden of proof are the traditional and appropriate means of challenging this testimony.

As a board-certified physician who specializes in the treatment of pulmonary, occupational, and environmental medicine, I find that Dr. Rose is qualified by her professional credentials and experience to form an opinion as to the cause of Plaintiff's lung disease.   As a treating physician, Dr. Rose's reasoning and methodology are reliable and her opinion is sufficiently relevant to the task at hand to satisfy the requirements of both Rule 702 and *Daubert*.   Simply put, I find that Plaintiff has made a sufficient showing of the relevance and reliability of Dr. Rose's testimony to permit her to testify as a treating physician and expert on the issue of causation at trial.   Accordingly, consistent with Judge Miller's prior order, Dr. Rose will be permitted to testify at trial concerning her medical opinion as to the cause of Plaintiff's lung disease that she formed during the course of Plaintiff's treatment.

III.   <u>CONCLUSION</u>

Based on the foregoing, it is

ORDERED that Defendants' supplemental Fed. R. Evid. 702 and *Daubert* challenge of Dr. Cecile Rose is **DENIED.**   Dr. Rose is permitted to testify at trial concerning her medical opinion as to the cause of Plaintiff's lung disease that she formed during the course of Plaintiff's treatment.

Dated:   June 7, 2012

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge