IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 08-cv-00091-WYD-CBS

WAYNE WATSON and
MARY WATSON

        Plaintiffs,

v.

DILLON COMPANIES, INC., d/b/a KING SOOPERS, also d/b/a INTER-AMERICAN
PRODUCTS, INC., et al.

        Defendants.

---

**ORDER**

---

THIS MATTER is before the Court on Defendants' Motion to Alter or Amend Final

Judgment Pursuant to Fed. R. Civ. P. 59 and 60 (ECF No. 815) and Plaintiffs' Motion to

Alter or Amend the Court's September 26, 2012 Judgment for Purposes of Increasing

the Punitive Damages Ratio Under CRS § 13-12-102 or, in the Alternative, Trebling

Damages Under CRS § 6-1-113 (ECF No. 817).

I.      INTRODUCTION

Plaintiffs, Wayne and Mary Watson, filed this case against the Defendants, Dillon

Companies, Inc., Gilster-Mary Lee Corporation, Inter-American Products, Inc., and The

Kroger Company (hereinafter "Gilster-Mary Lee"), because of Plaintiff Wayne Watson's

respiratory disorders, which he contends are the result of inhaling a butter flavoring

compound known as diacetyl contained in microwave popcorn manufactured and

distributed by the Defendants.

After lengthy pretrial motions practice, settlement discussions, expert witness

challenges, discovery and other legal wrangling and delays by the parties, this case finally went to trial on September 4, 2012.  The jury reached its verdict on September 19, 2012, awarding the Plaintiffs more than seven million dollars in damages.  Specifically, the jury awarded Plaintiff Wayne Watson $667,961 in damages for economic losses excluding any damages for physical impairment; $1,000,000 in damages for non-economic losses or injuries excluding damages for physical impairment; and $450,000 in damages for physical impairment.  The jury apportioned fault as follows:  5% charged to Defendant Dillon Companies; 15% charged to Defendant The Kroger Co.; and 80% charged to Defendant Gilster-Mary Lee Corp.  The jury also awarded Plaintiff Wayne Watson $5,000,000 in punitive damages.  The jury further awarded Plaintiff Mary Watson $100,000 in damages for her loss of consortium claim.

On September 26, 2012, Judgment was entered against the Defendant Dillon Companies in the amount of $33,398.05 (.05 x $667,961.00) for Plaintiff Wayne Watons's economic losses, in the amount of $50,000.00 (.05 x $1,000,000.00) for Plaintiff Wayne Watson's non-economic losses, in the amount of $22,500.00 (.05 x $450,000.00) for Plaintiff Wayne Watson's physical impairment, and in the amount of $5,000.00 (.05 x $100,000.00) for Plaintiff Mary Watson's loss of consortium claim.

Judgment was also entered against Defendant The Kroger Co. in the amount of $100,194.15 (.15 x $667,961.00) for Plaintiff's economic losses, in the amount of $150,000.00 (.15 x $1,000,000.00) for Plaintiff's non-economic losses, in the amount of $67,500.00 (.15 x $450,000.00) for Plaintiff's physical impairment, and in the amount of $15,000.00 (.15 x $100,000.00) for Plaintiff Mary Watson's loss of consortium claim.

Judgment was entered against Defendant Gilster-Mary Lee Corporation in the amount of $534,368.80 (.80 x $667,961.00) for Plaintiff's economic losses, in the amount of $800,000.00 (.80 x $1,000,000.00) for Plaintiff's non-economic losses, in the amount of $360,000.00 (.80 x $450,000.00) for Plaintiff's physical impairment, in the amount of $5,000,000 for punitive damages, and in the amount of $80,000.00 (.80 x $100,000.00) for Plaintiff Mary Watson's loss of consortium claim.

After the entry of judgment, the parties collectively filed five post-trial motions to alter or amend the Judgment, for a new trial, or for judgment as a matter of law. Additionally, Plaintiffs filed a motion for attorney fees and costs. After reviewing all of the relevant pleadings, I issued a written order denying the motions for judgment as a matter of law. *See* ECF No. 871. I heard argument on the remaining post-trial motions on August 8, 2013. After considering the arguments from both parties at the hearing on August 8, 2013, and applying the appropriate legal standards, for the reasons stated on the record and set forth below, I find that the remaining post-trial motions should be granted in part and denied in part.

II.     MOTIONS TO AMEND/ALTER JUDGMENT

Both sides request that I alter or amend the Final Judgment (ECF No. 812). Defendants request that I reduce the amount awarded for Plaintiff Wayne Watson's non-economic damages apportioned to Defendant Gilster-Mary Lee pursuant to the statutory cap on non-economic damages set forth in Colo. Rev. Stat. §§ 13-21-102.5(3) and 13-21-102. Accordingly, Defendants further request that I reduce Plaintiff Wayne Watson's punitive damage award against Defendant Gilster-Mary Lee to its apportioned and adjusted amount of actual compensatory damages. Plaintiffs, on the other hand,

request that I increase the punitive damage award pursuant to Colo. Rev. Stat. § 13-12-102, or in the alternative, treble the actual damages pursuant to Colo. Rev. Stat. § 6-1-113.

A.      Standard of Review

A litigant subject to an adverse judgment, who seeks reconsideration by the district court of that adverse judgment, may file either a motion to alter or amend the judgment pursuant to Fed. R. Civ. P. 59(e) or a motion seeking relief from the judgment pursuant to Fed. R. Civ. P. 60(b).  Under Rule 59(e), a motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment. Fed. R. Civ. P. 59(e).  In this case, the final judgment (ECF No. 812) entered on September 26, 2012, and the parties filed their motions to alter or amend the judgment (ECF Nos. 815 and 817) on October 10, 2012 and October 19, 2012.  The motions were filed within twenty-eight days after judgment entered and are therefore timely.

In order for a party to succeed on a Rule 59 motion, the party must show either "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, [or] (3) the need to correct clear error or prevent manifest injustice." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).  However, a Rule 59(e) motion is not an opportunity to rehash arguments previously addressed or to advance new arguments that could have been raised previously.  *Id.*  Finally, the decision to grant a Rule 59(e) motion is within the discretion of the district court.  *Brown v. Presbyterian Healthcare Serv.*, 101 F.3d 1324, 1332 (10th Cir. 1996) ("[I]n determining whether to grant or deny a Rule 59(e) motion to alter or amend judgment, the district court is vested with considerable discretion.").

B.    Analysis

1.    Defendants Dillon Companies' Motion to Alter or Amend Final
Judgment Pursuant to Fed. R. Civ. P. 59 and 60 (ECF No. 815)

Defendants ask me to amend the final judgment to reduce Plaintiff Wayne

Watson's non-economic damage award against Gilster-Mary Lee from $800,000 to the

statutory cap of $366,250.  Relying on their assertion that Plaintiff Wayne Watson's

claims for relief accrued before January 1, 2008 and after January 1, 1998, Defendants

cite Colo. Rev. Stat. § 13-21-102.5(3)(a) and § 13-21-102.5(3) to support the argument

that these statutory provisions limit claims for relief to the cap of $366,250.  These

statutes read in relevant part:

> (3)(a) In any civil action other than medical malpractice
> actions in which damages for non-economic loss or injury
> may be awarded, the total of such damages shall not exceed
> the sum of two hundred fifty thousand dollars, unless the
> court finds justification by clear and convincing evidence
> therefor.  In no case shall the amount of non-economic loss
> or injury damages exceed five hundred thousand dollars.

Colo. Rev. Stat. § 13-21-102.5(3)(a).

> (c)(I) The limitations on damages set forth in paragraphs (a)
> and (b) of this subsection (3) shall be adjusted for inflation as
> of January 1, 1998, and January 1, 2008. ...

Colo. Rev. Stat. § 13-21-102.5(3)(c)(I).

> (A) The adjusted limitation on damages shall be the
> limitation applicable to all claims for relief that accrue on or
> after January 1, 1998, and before January 1, 2008 ...

Colo. Rev. Stat. § 13-21-102.5(3)(c)(III)(A).

In accordance with Colo. Rev. Stat. § 13-21-102.5(3)(c)(III), on October 18, 2011,

the Colorado Secretary of State certified that

the adjusted limitations for damages, utilizing the 'consumer price index for Denver-Boulder, all items, all urban consumers', are as follows:

For all claims for relief that accrue on or after January 1, 1998, and before January 1, 2008:

>FOR C.R.S. 13-21-102.5(3)(a) the adjusted limited is $366,250, which may be increased by the court upon clear and convincing evidence to a maximum of $732,500.

>\*\*\*

For all claims for relief that accrue on or after January 1, 2008:

>FOR C.R.S. 13-21-102.5(3)(a) the adjusted limited is $468,010, which may be increased by the court upon clear and convincing evidence to a maximum of $936,030.

URL: http//www.sos.state.co.us/pubs/info_center/files/damages_new.pdf

In response, Plaintiffs contend that Wayne Watson's cause of action accrued after January 1, 2008, making the cap on the amount of non-economic damage not less than $468,010.

Thus, I first turn to the issue of when Plaintiff Wayne Watson's cause of action accrued.  Under Colo. Rev. Stat. § 13-80-108,

>(1) Except as provided in subsection (12) of this section, a cause of action for injury to person, property, reputation, possession, relationship, or status shall be considered to accrue on the date both the injury and its cause are known or should have been known by the exercise of reasonable diligence.

>\*\*\*

>(8) A cause of action for losses or damages not otherwise enumerated in this article shall be deemed to accrue when the injury, loss, damage, or conduct giving rise to the cause of action is discovered or should have been discovered by

the exercise of reasonable diligence.

In support of their argument that Plaintiff Wayne Watson's lung injury accrued prior to January 1, 2008, Defendants highlight a volume of evidence including trial testimony and exhibits from Dr. Cecile Rose, Plaintiff Wayne Watson's treating physician.

At trial, Dr. Rose testified that her colleague, Dr. Ronald Balkissoon began treating Wayne Watson for complaints of pulmonary dysfunction as early as May 2006. (Trial Tr. 578:4-7, Sept. 7, 2012).  Dr. Rose also testified that on or about August 2006, a biopsy confirmed that Wayne Watson had a lung disease called hypersensitivity pneumonitis and showed "features of bronchiolitis."  (Trial Tr. 578:11-15).  Dr. Bakissoon referred Wayne Watson to Dr. Rose because his lung functioning was declining, he was not "responding to treatment, and [Wayne Watson] was worried that if his lung function continued to decline that he would ultimately come to the point where he would maybe need a lung transplant."  (Trial Tr. 579:3-12).

Prior to her initial visit with Wayne Watson on February 8, 2007, Dr. Rose testified that she was getting a clinical picture regarding his diagnosis "from all of the tests from the CT scan, from the pulmonary function test and from the biopsy."  (Trial Tr. at 593:18-594:1).  On February 8, 2007, in her Progress Notes, Dr. Rose stated that she "[s[uggested [Plaintiff] discontinue exp[osure] to microwave butter popcorn pending further assessment" and that Plaintiff "eats large amounts of buttered popcorn every day."  (Trial Ex. 236 at 55, 58).  Following the initial February 8, 2007 visit, Dr. Rose personally reviewed Wayne Watson's surgical lung biopsy, in addition to reviewing them with the head of pulmonary pathology at National Jewish Health, and interpreted the

slides as showing bronchiolitis obliterans.  (Trial Tr. at 594:15-595:7).  During one of her visits with Wayne Watson, Dr. Rose "told Mr. Watson that [she] was concerned that he had developed bronchiolitis from his frequent eating of extra-butter-flavored microwave popcorn."  (Trial Tr. at 595:12-14).  On February 20, 2007, Dr. Rose sent a letter to Dr. Balkissoon stating "[o]ne possibility that I am investigating further is his daily use of microwave popcorn . . . ."  (Trial Ex. 236 at 82).

On July 18, 2007, Dr. Rose sent letters to several government agencies stating, "We have recently identified a patient [Wayne Watson] with significant lung disease whose clinical findings are similar to those described in affected workers, but whose only inhalational exposure is as a heavy, daily consumer use of butter flavored microwave popcorn."  (Trial Ex. A-84 at 1-8).  Moreover, when examined about her July 18, 2007 government agency letters, Dr. Rose testified that Plaintiff Wayne Watson had contracted "constricted bronchiolitis or bronchiolitis obliterans syndrome" based on her experience working in the flavoring industry and her study of "the medical literature . . . published about flavoring-related and popcorn-related lung disease."  (Trial Tr. 593:2-8, Sep. 7, 2012).

Based on my review of the transcripts, exhibits and my recollection of the trial testimony and for the reasons stated on the record at the August 8, 2013 hearing, I agree with the Defendants that the evidence shows that Plaintiff Wayne Watson discovered (or should have discovered) his lung injury and its cause before January 1, 2008.[1]  Thus, pursuant to Colo. Rev. Stat. § 13-21-102.5(3)(a), Wayne Watson's non-

---

[1] I further note that Wayne Watson first filed his Complaint in this case on January 15, 2008.  Thus, I find it both unlikely and unsupported by the evidence that Mr. Watson discovered

economic damages are capped at $366,250 from each individual Defendant.  However,

if I find by clear and convincing evidence that there is justification, the statute permits

non-economic damages to be increased, up to double the statutory cap, or $732,500.

§ 13-21-102.5(3)(a) & n.1; *see also General Electric Co. v. Niemet*, 866 P.2d 1361,

1364-66 (Colo. 1994) (detailing legislative history of the statute).

Despite the urging of the Plaintiffs, I do not find that this case presents the type of

exceptional circumstances warranting non-economic damages beyond the statutory

cap.  In *Hoffman v. Ford Motor Co.*, 690 F. Supp. 2d 1179 (D. Colo. March 4, 2010), this

Court found that exceptional circumstances warranted non-economic damages that

exceeded the statutory cap because the *Hoffman* plaintiff

> suffered incredibly grievous and profound injuries as a result
> of the rollover accident that forms the basis of her claims
> against defendant.  Only a teenager when she was rendered
> a tetraplegic, Erica will never be able to live or care for
> herself independently.  The personal difficulties and
> indignities attendant on having to have her most basic and
> intimate needs attended to by someone else were recounted
> in excruciating detail during the trial.  In addition, the ambit of
> her world has shrunken to the parameters of her parents
> home, where the majority of her time is spent watching
> television or on the computer.  Her plans for college and
> dreams of some day having a family of her own have
> evanesced, and her life expectancy has been appreciably
> truncated by her injuries.

*Id.* at 1181.  I do not find such exceptional circumstances are present in the instant

case.  Unlike the *Hoffman* plaintiff, Wayne Watson's injury has not rendered him

completely disabled.  He works part-time, takes walks outdoors with his wife, and is able

---

his lung injury and its cause in the two-week period after January 1, 2008 but before January
15, 2008.

to move upstairs and downstairs at home.  (Trial Tr. 902:10-15, 989:18-990:21).  Finally,

there was testimony that once Wayne Watson stopped eating popcorn, his lung

condition stabilized.  (Trial Tr. 902:5-9).  While I am sympathetic to the lung injury

sustained by Wayne Watson, the evidence indicates that he is able to function

independently, exercise with modification, and work part-time.  Thus, I do not find that

there is clear and convincing evidence that supports an increase to the non-economic

damages cap of $366,250.  Accordingly, I grant Defendants' motion to amend the final

judgment.  Applying the statutory cap for non-economic damages, which applies to the

liability share of each Defendant in this case, I reduce the award of damages for non-

economic loss in the judgment against Defendant Gilster-Mary Lee Corporation to

$366,250.  The judgments for non-economic loss against Defendant the Dillon

Companies ($50,000) and Defendant The Kroger Company ($150,000) remain

unchanged by this Order.

> 2.    Plaintiffs' Motion to Alter or Amend the Court's September 26, 2012 Judgment for Purposes of Increasing the Punitive Damages Ratio Under CRS § 13-12-102, or in the Alternative, Trebling Damages Under CRS § 6-1-113 (ECF No. 817)

Plaintiffs first request that I treble the $5,000,000 punitive damage award against

Defendant Gilster-Mary Lee under the Colorado exemplary damages statute.  Colo.

Rev. Stat. § 13-21-102(1)(a) states that a jury may award reasonable exemplary

damages not to exceed an amount which is equal to the amount of the actual damages

awarded to the injured party.  The Colorado Supreme Court has interpreted the statute

to mean that it "places a maximum on a plaintiff's exemplary damages award recovery

which is measured by the amount of compensatory damages after reduction for

comparative negligence and pro rata liability."  *Lira v. Davis*, 832 P.2d 240, 246 (Colo.

1992).

However, the statute goes on to permit the court to

> increase any award of exemplary damages, to a sum not to
> exceed three time the amount of actual damages, if it is
> shown that:
> (a) The defendant has continued the behavior or repeated
> the action which is the subject of the claim against the
> defendant in a willful and wanton manner, either against the
> plaintiff or another person or persons, during the pendency
> of the case; or
> (b) The defendant has acted in a willful and wanton manner
> during the pendency of the action in a manner which has
> further aggravated the damages of the plaintiff when the
> defendant knew or should have known such action would
> produce aggravation.

Colo. Rev. Stat. § 13-21-102(3).

In support of increasing the punitive damage award, Plaintiffs contend that the

Defendants have wilfully and wantonly continued the behaviors and repeated the

actions which were the subject of the failure to warn claim asserted against them.

Specifically, Plaintiffs argue that Defendants "continue to refuse to provide any warnings

on [butter-flavored microwave popcorn products], despite knowledge that this behavior

has resulted in at least one case of severe lung damage."  (Mot. at 5).  Plaintiffs also

highlight a public statement issued by the Defendants after the jury verdict "arguing that

they had done nothing wrong and refusing to take any responsibility or action to protect

their millions of existing microwave popcorn customers."  (Mot at 6).

In response, Defendants state that it is undisputed that the behavior at issue, the

use of diacetyl in butter-flavored microwave popcorn, did not continue during the

pendency of the case.  "[S]uch behavior ceased nearly a year before this action was

even commenced." (Resp. at 2).  I agree.  Plaintiffs' cause of action concerned the sale

of microwave popcorn that contained the butter-flavoring chemical, diacetyl.  The bulk of

the evidence concerned whether diacetyl proximately caused Wayne Watson's lung

injury.  In fact, the Court held extensive pretrial hearings on this very issue.  Dr.

Egilman, Plaintiffs' expert witness, opined that diacetyl was the proximate cause of

Wayne Watson's lung injury.  *See* Hr'g Tr. 79:1-7, September 5, 2012.  Moreover, Tom

Welge testified that the Defendants started the process of eliminating diacetyl in their

products in 2006.  Both Tom Welge and Kathy Jordan testified that Defendants

completed the process of eliminating diacetyl from their products in the Spring of 2008.

*See* Jordan Video Dep. 23:3-13, 23:25-24:6, Nov. 19, 2009, at Tr. 880, Sep. 11, 2012;

*see also* T. Welge Dep. 75:19-76:19, Nov. 17, 2009, at Tr. 734, Sep. 10, 2012.

Contrary to the Plaintiffs' assertions and citations to their closing argument at

trial[2], I find that there is no credible evidence that the Defendants continued their use of

the chemical diacetyl in their butter-flavored microwave popcorn products during the

pendency of the case as required by Colo. Rev. Stat. § 13-21-102(3).  Thus, after

reviewing the testimony presented during the trial, hearing argument at the August 8,

2013 hearing and applying the law set forth above, I find that the jury's awards against

the Defendants are sufficient.  Plaintiffs were appropriately compensated, and an

increase in punitive damages is not warranted.

Accordingly, pursuant to the language of Colo. Rev. Stat. § 13-21-102(1)(a), I

must reduce the jury's award of $5,000,000 in punitive damages against Defendant

---

[2] Arguments and statements made by attorneys are not evidence and will not be considered as such.

Gilster-Mary Lee to "no greater than the amount of actual damages [it] owes." *Lira*, 832

P.2d at 246.  Defendant Gilster-Mary Lee's actual damages are $534,368.80 (0.80 x

$667,961.00) for economic losses; $366,250.00 for non-economic losses as reduced

above; and $360,000.00 (0.80 x $450,000.00) for physical impairment for a total of

$1,260,618.80.  Based on the statutory limitation, punitive damages for the Plaintiffs are

reduced from $5,000,000 to $1,260,618.80 under Colo. Rev. Stat. § 13-21-102(1)(a).

Plaintiffs next seek treble damages under Colo. Rev. Stat. § 6-1-113, arguing

that "Defendants' intentional refusal to provide any warning to the millions of consumers

who use their butter-flavored microwave popcorn is bad faith." (Mot. at 9).  The

Colorado Supreme Court has held that in general, "a plaintiff may not recover both

treble damages and punitive damages premised on the same facts because such

damage awards serve similar purposes." *Lexton-Ancira Real Estate Fund v. Heller*, 826

P.2d 819, 822 (Colo. 1992).  Both treble damages and punitive damages serve to

punish." *Id.*  In this case, the jury returned a verdict on Plaintiffs' claims for strict liability,

negligence, violation of the CCPA, and Plaintiffs' claim for exemplary damages against

Defendant Gilster-Mary Lee.  These claims all arose out of the Defendants' conduct in

selling microwave popcorn containing diacetyl and the failure to warn consumers about

the health effects of diacetyl.  Under these circumstances and for the reasons noted on

the record at the August 8, 2013 hearing, I find that the Plaintiffs may not recover both

treble damages and punitive damages as they are duplicative under Colorado law.

Plaintiffs' motion is denied.

III.   CONCLUSION

In conclusion, based on the foregoing, it is

ORDERED that Defendants Dillon Companies' Motion to Alter or Amend Final

Judgment Pursuant to Fed. R. Civ. P. 59 and 60 (ECF No. 815) is **GRANTED.**  Applying

the statutory cap for non-economic damages, which applies to the liability share of each

Defendant in this case, I reduce the award of damages for non-economic loss in the

judgment against Defendant Gilster-Mary Lee Corporation to $366,250.  The judgments

for non-economic loss against Defendant the Dillon Companies ($50,000) and

Defendant The Kroger Company ($150,000) remain unchanged by this Order.  It is

FURTHER ORDERED that Plaintiffs' Motion to Alter or Amend the Court's

September 26, 2012 Judgment for Purposes of Increasing the Punitive Damages Ratio

Under CRS § 13-12-102, or in the Alternative, Trebling Damages Under CRS § 6-1-113

(ECF No. 817) is **DENIED.**

In accordance therewith, the Clerk of the Court shall amend the Judgment is as

follows:

1.  Total Economic Damages awarded by Jury: **$667,961**
    Apportionment of fault:
    Dillon Companies -  5%    (.05 x $667,961.00) =    **$ 33,398.05**
    Kroger -           15%   (.15 x $667,961.00) =    **$100,194.15**
    Gilster -          80%   (.80 x $667,961.00) =    **$534,368.80**

2.  Total Non-Economic Damages: **$566,250** (reduced pursuant to Colo. Rev. Stat. §§ 13-21-102.5(3) and 13-21-102)
    Apportionment of fault:
    Dillon Companies -  5%    (.05 x $1,000,000) =    **$ 50,000.00**
    Kroger -           15%   (.15 x $1,000,000) =    **$150,000.00**
    Gilster -          **(as reduced from $800,000) =    $366,250.00**

3.  Total Damages for Physical Impairment awarded by Jury: **$450,000**

Apportionment of fault:

|  |  |  |  |
|---|---|---|---|
| Dillon Companies - | 5% | (.05 x $450,000.00) = | **$ 22,500.00** |
| Kroger - | 15% | (.15 x $450,000.00) = | **$ 67,500.00** |
| Gilster - | 80% | (.80 x $450,000.00) = | **$360,000.00** |

4.  Total Punitive Damages awarded: **$1,260,618.80** (reduced pursuant to Colo. Rev. Stat. § 13-21-102(1)(a))

Gilster -                    100%

|  |  |  |
|---|---|---|
| Economic Damages | = | **$534,368.80** |
| Non-Economic Damages (as reduced) | = | **$366,250.00** |
| Physical Impairment | = | **$360,000.00** |
| Total | = | **$1,260,618.80** |

5.  Total Damages for Loss of Consortium awarded by Jury: **$100,000**
Apportionment of fault:

|  |  |  |  |
|---|---|---|---|
| Dillon Companies - | 5% | (.05 x $100,000.00) = | **$  5,000.00** |
| Kroger - | 15% | (.15 x $100,000.00) = | **$ 15,000.00** |
| Gilster - | 80% | (.80 x $100,000.00) = | **$ 80,000.00** |

6.  Total Damages awarded with reductions:  **$3,044,829.80**

Dated:  August 28, 2013

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
Senior United States District Judge