IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 08-cv-00091-WYD-CBS

WAYNE WATSON and
MARY WATSON

      Plaintiffs,

v.

DILLON COMPANIES, INC., d/b/a KING SOOPERS, also d/b/a INTER-AMERICAN PRODUCTS, INC., et al.

      Defendants.

---

# ORDER

---

## I.    INTRODUCTION

This matter is before me on Plaintiffs' Motion for Attorney Fees and Costs Pursuant to Colo. Rev. Stat. § 6-1-113 (ECF No. 826). Here, Plaintiffs seek an award of attorney fees and costs, as authorized by Colo. Rev. Stat. § 6-1-113(2)(b). However, for reasons stated on the record at the August 8, 2013 hearing, I deny the request for costs without prejudice in light of the Clerk of the Court's Order Taxing Costs in the amount of $38,439.78. *See* ECF No. 865.

By way of background, I note that following a two-week jury trial, the jury returned a verdict in favor of the Plaintiffs on the following four claims: (1) strict liability; (2) failure to warn: (3) negligence; and (4) deceptive trade practices under the Colorado Consumer Protection Act. On September 26, 2012, Judgment was entered in favor of the Plaintiffs and against the Defendants in the amount of $7,217,961. In a separate Order filed contemporaneously herewith, I granted Defendants' motion to alter or amend

the judgment and reduced the amount of total damages awarded to Plaintiffs to $3,044,829.80.[1]

## II. STANDARD OF REVIEW

The Colorado Consumer Protection Act ("CCPA") provides for an award of attorney fees to a prevailing plaintiff who proves that a defendant engaged in a deceptive trade practice as defined by the Act. Colo. Rev. Stat. § 6-1-113(2)(b) provides that

> (2) Except in a class action or a case brought for a violation of section 6-1-709, any person who, in a private civil action, is found to have engaged in ... any deceptive trade practice listed in this article shall be liable in an amount equal to the sum of:
> ...
> (b) In the case of any successful action to enforce said liability, the costs of the action together with reasonable attorney fees as determined by the court.

In this case, the jury concluded that the Defendants engaged in a deceptive trade practice, as defined by the CCPA, that caused actual damages or losses to the Plaintiff Wayne Watson. In awarding attorney fees under the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-113(2), I may consider the amount in controversy, the amount of time expended, the complexity of the case, and the value of the legal services to the client. *See Robinson v. Lynmar Racquet Club, Inc.*, 851 P.2d 274, 280 (Colo. App. 1993); *Public Service Co. of Colorado*, 26 F.3d 1508, 1520 (10th Cir. 1994).

Generally, the court's initial estimate of reasonable attorney fees is reached by

---

[1] A detailed recitation of the background of this case is set forth in the Order granting Defendants' motion to alter or amend the judgment and is incorporated by reference herein.

calculation of the "lodestar" amount. The lodestar amount represents the number of hours reasonably expended multiplied by a reasonable hourly rate, and which carries with it a strong presumption of reasonableness. *Tallitsch v. Child Support Services, Inc.*, 926 P.2d 143, 147-148 (Colo. App. 1996). Once the lodestar amount is determined for purposes of awarding attorney fees, that basic amount may be adjusted upward or downward by application of factors such as amount in controversy, length of time required to represent the client effectively, complexity of the case, value of the legal services to the client, and awards in similar cases, together with the degree of success achieved and those factors set forth in Rules of Professional Conduct, Rule 1.5. *Id.*

### III. DISCUSSION

#### A. The Lodestar

The Independence, Missouri law firm of Humphrey, Farrington & McClain, P.C. ("HFM") represented the Plaintiffs throughout the pendency of this matter. HFM states that they collectively spent a total of 6,161 hours working on this case. Plaintiffs' Ex. 1 at 124. HFM charged at rates ranging between $200 to $750 per hour, depending on the experience and skill of the attorney involved as well as the task being performed. As supported by the testimony of Plaintiffs' expert witness, Stuart Ollanik, at the August 8, 2013 hearing, Plaintiffs argue that these rates are reasonable. Plaintiffs' Ex. 3 ¶ 18. Plaintiffs contend that these rates are also consistent with rates regularly charged by other attorneys in similar areas of practice. Plaintiffs' Ex. 3 ¶¶ 18-23. In summary, Plaintiffs contend that attorney fees in the amount of $1,399,494.00 are reasonable and provide a basis for the initial lodestar estimate.

In response, Defendants state that the fee request should be reduced because the billing statement lacks specificity to identify the services rendered for each attorney performing the services and for which defendant the services were performed. *See* ECF No. 827-2. Defendants also assert that the requested fees are (1) excessive in both time and activities not reasonably spent in connection with the prosecution of the CCPA claim and (2) the requested attorney rates exceed the prevailing market by lawyers in the community. Moreover, Defendants argue that I should reduce the attorney fee request because of (1) the number of attorneys and paralegals that participated in this case and attended or supported the trial and (2) the number of attorneys that appeared in court after the case was presented to the jury.

In support of their arguments for a reduction in fees, Defendants engaged the services of Michael O'Donnell, Esq., of Wheeler Trigg O'Donnell LLP. Mr. O'Donnell prepared a report and testified at the August 8, 2013 hearing. Mr. O'Donnell concluded that the Plaintiffs' billing statement is excessively vague and lacks the requisite minimal specificity in identifying the nature of services performed. See Defs' Ex. B at 7-9. Based on his analysis, Mr. O'Donnell opined that the total number of hours allocable to Defendants should be 4341.3, which is then subject to further reductions. In conclusion, Mr. O'Donnell calculated that a fee award of $282,360 is appropriate.

Turning to my analysis, I first consider the reasonableness of the hourly rates of the various HFM attorneys and paralegals who worked on this case. Attorney Kenneth McClain is lead trial counsel for Plaintiffs in this matter, and his rate is $550 per hour with an increased rate of $750 per hour during trial. Defendants object to the increased rate of $750 during trial, noting that such a "split" rate is highly unusual. After hearing

argument and testimony from the two expert witnesses on this issue at the August 8, 2013 hearing, I agree with Defendants that Mr. McClain's $750 per hour rate during trial is unreasonable and inconsistent with customary billing practices. However, I do find that the hourly rate of $550 for Mr. McClain is reasonable in light of his experience, qualifications, and skill. In addition to Mr. McClain, seven other HFM attorneys worked on this case with hourly rates ranging from $180 to $300 per hour. Four of those attorneys are shareholders and the remaining three attorneys are associates. HFM's shareholders' rates range from $220 to $300 per hour. HFM's associates' rates range from $180 to $200 per hour, and HFM's paralegals charge $75 per hour. Defendants do not dispute the reasonableness of these rates, and based on my careful consideration, I find that these rates are reasonable. At the August 8, 2013 hearing, Plaintiffs' expert witness, Stuart Ollanik, proposed a blended attorney rate of $275.50 per hour, which I find to be reasonable in calculating the lodestar as noted on the record. Hr'g Ex. 56.

I next consider the issue of whether the number of hours billed is reasonable. As set forth above, Plaintiffs seek the recovery of fees for 6,161 hours of work. Defendants make multiple arguments for a reduction in fees including (1) a reduction for fees incurred in pursuit of non-CCPA claims; (2) a reduction in fees so that the Defendants would only be liable for their respective shares and not for the shares of the other defendants who were involved in the case at one time; and (3) a reduction in fees based on vague and/or duplicative billing entries and block billing.

While I find the first two arguments for a reduction to be unsupported by controlling authority applied to this record, I do find merit in Defendants' argument that

the fee request should be reduced due to duplication and excessively vague billing entries. *See In re Green*, 11 P.3d 1078, 1089 (Colo. 2000) (holding that vague entries provide a sufficient rationale to conclude that a specific charge is unreasonable). D.C.COLO.L.Civ.R 54.3.B.1 requires the Plaintiffs to include "a detailed description of the services rendered . . . for each person for whom fees are claimed." *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (stating that the party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly).

Though not required to do so, I conducted a painstaking review of each billing entry listed in HFM's 124-page billing statement. *See Am. Water Dev.*, 874 P.2d 352, 387 (Colo. 1994) (recognizing that it is unrealistic to expect a trial judge to evaluate and rule on every entry in an application and endorsing percentage cuts as a practical mans of trimming fat from a fee application). For example, Plaintiffs submitted their billing statement with general descriptions such as, "research," "review discovery," and "conference with staff.". These types of vague entries occur throughout 2008 and account for approximately 50 hours for discovery "review" and approximately 61 hours for "research and review."   Other vague entries in 2008 include "scientific research," numerous entries for "travel," "prepare chart regarding purchases," and "review product identification." *See* Plaintiffs' Ex. 1 at 1-26.

In 2009, "Review document production" entries appear numerous times. *See* Plaintiffs' Ex. 1 at 27, 36-41. Also, multiple vague "Research" entries appear totaling approximately 21 hours of unspecified charges. Plaintiffs' Ex. 1 at 32-33, 35-37, 39.

Also, in 2009, two HFM shareholders billed 3.5 hours in April for unspecified "review" of a scheduling order. Plaintiffs' Ex. 1 at 31.

In 2011, HFM submitted approximately five vague entries totaling 9.5 hours for "case status review" without any further clarifying information. Plaintiffs' Ex. 1 at 78. On June 7, 2011, an HFM associate billed .5 hours ($100) for sending another HFM associate a single text message. Plaintiffs' Ex. 1 at 73. Further, HFM submitted more than 40 separate charges totaling approximately 290 hours stating either "Prepare for Daubert hearing" or "Prepare for hearing" without any detail as to the particular tasks being performed. Plaintiffs' Ex. 1 at 68-77.

HFM's billing statement also includes numerous entries for "Travel" to and from Denver and other locations. Without further clarifying information, it is impossible for me to determine the amount of time dedicated to travel, as opposed to attorney or paralegal work hours. Plaintiffs' Ex. 1 at 10, 12, 32, 37, 43, 46-47, 49, 53-55, 57, 66-67, 75-77, 79, 81-82, 84-88, 94-95, 97, 103-104, 112-113, 116-117, 120, 122-123. Additionally, between October 26, 2010 and September 3, 2012, HFM submitted more than 95 separate charges totaling approximately 440 hours for "Trial preparation." None of these entries identifies any of the activities conducted in preparing for trial. Plaintiffs' Ex. 1 at 65-66, 68, 79-80, 96, 98, 101-123.

In addition to vague billing entries, my review of Plaintiffs' billing statement revealed many instances of duplicative or redundant charges. "The term duplicative in the context of attorney's fees requests usually refers to situations where more than the necessary number of lawyers are present for a hearing or proceeding or when multiple lawyers do the same task. The more lawyers representing a side of the litigation, the

greater the likelihood will be for duplication of services." *Robinson v. City of Edmond*, 160 F.3d 1275, 1285 n.10 (10th Cir. 1998) (internal citation and quotation omitted).

Here, Plaintiffs' requested fees include charges for as many as eight attorneys and three paralegals. While this number of people working on a case of this duration is understandable, the number of attorneys attending the same hearings and the trial is a concern. For example, in June of 2011, District Judge Walker Miller presided over the first *Daubert* hearing in this case ("*Daubert* I"). Five attorneys (including at least three shareholders and two associate attorneys) and one paralegal traveled to Denver and attended the hearing. Approximately 500 total hours were billed in connection with the preparation for and attendance of this hearing. Plaintiffs' Ex. 1 at 69-77.

In April of 2012, I held a second *Daubert* hearing (*Daubert* II). Similar to *Daubert* I, HFM sent at least four attorneys and one paralegal to attend the 5-hour hearing. Plaintiffs' Ex. 1 at 93-95. The trial was held in September of 2012. Based on my careful review of HFM's billing statement, 5 attorneys and 2-3 paralegals attended the 2-week trial. Additionally, although this case was submitted to the jury for deliberation on September 17, 2012, 4-5 attorneys returned to court on both September 18 and 19, billing for this time spent awaiting a jury verdict. Plaintiffs' Ex. 1 at 106-123.

Accordingly, based on my judicial experience and careful consideration of the evidence and governing law, I find that Plaintiffs' claimed number of hours expended are unreasonable and excessive due to both vagueness and duplication. Based on the above noted billing inadequacies, I reduce Plaintiffs' claimed number of hours expended to 3000. Thus, I find that the lodestar amount (the number of hours reasonably expended—3000—multiplied by the reasonable blended hourly rate of $275.50) is

$826,500. *See Tallitsch*, 926 P.2d at 147-148.

      B.     <u>Upward or Downward Adjustment to Lodestar</u>

Once the lodestar amount is determined for purposes of awarding attorney fees, that basic amount may be adjusted upward or downward by application of factors noted in section II of this Order. However, the lodestar is a presumptively reasonable fee award, taking into account most of the factors that bear on the reasonableness of the award, and thus, adjustments to the lodestar should only be made in rare and exceptional cases. *Pennsylvania v. Delaware Valley Citizens Council for Clean Air*, 478 U.S. 546, 564–65 (1986).

In their motion, Plaintiffs request that I multiply the lodestar by 3, arguing that the time, labor, novelty and complexity of this matter weigh in favor of an upward adjustment. However, after considering all of the above factors and as noted on the record at the August 8, 2013 hearing, I am unconvinced that an upward adjustment of the lodestar figure is merited in this case. The issues in this case were not so exceptional, rare, or complex as to justify an enhancement, and I considered the experience and expertise of counsel in determining their hourly rates. I also considered the amount in controversy, the time expended, and the value of HFM's legal services to the Plaintiffs, and I find that the lodestar figure is reasonable and requires no adjustment. Likewise, I deny the Defendants' request that I adjust downward the lodestar amount.

IV.    <u>CONCLUSION</u>

Based on the foregoing and for reasons stated on the record at the August 8, 2013 hearing, it is

ORDERED that Plaintiffs' Motion for Attorney Fees and Costs Pursuant to Colo. Rev. Stat. § 6-1-113 (ECF No. 826) is **GRANTED** to the extent that Plaintiffs are awarded attorney fees in the amount of **$826,500** against the Defendants.  The request for costs is **DENIED WITHOUT PREJUDICE** in light of the Clerk of the Court's Order Taxing Costs in the amount of $38,439.78.

Dated:  August 28, 2013

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Senior United States District Judge