IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 08-cv-00091-WYD-CBS

WAYNE WATSON and
MARY WATSON

        Plaintiffs,

v.

DILLON COMPANIES, INC., d/b/a KING SOOPERS, also d/b/a INTER-AMERICAN
PRODUCTS, INC., et al.

        Defendants.

---

## ORDER

---

I.   <u>INTRODUCTION</u>

      This matter is before me on Plaintiffs' Renewed Motion for Costs and Correction
of Pre-Judgment Interest Rate (ECF No. 896).  Plaintiffs seek an award of costs in the
amount of $515,257.28 as authorized by Colo. Rev. Stat. § 6-1-113(2) in addition to
attorney fees and the costs previously awarded by the Clerk of the Court.  Plaintiffs
further request that I amend the judgment to award prejudgment interest at a rate of 9%
per annum.  For the reasons stated below, the motion is granted in part and denied in
part.

      By way of background, following a two-week jury trial, the jury returned a verdict
in favor of the Plaintiffs on the following four claims: (1) strict liability; (2) failure to warn:
(3) negligence; and (4) deceptive trade practices under the Colorado Consumer
Protection Act ("CCPA").  On September 26, 2012, Judgment was entered in favor of
the Plaintiffs and against the Defendants in the amount of $7,217,961.  In a written

order, I granted Defendants' motion to alter or amend the judgment and reduced the

amount of total damages awarded to Plaintiffs to $3,044,829.80.[1]  (ECF No. 898).  In a

separate written order, I granted Plaintiffs' motion for attorney fees and awarded

Plaintiffs $826,500 in attorney fees pursuant to Colo. Rev. Stat. § 6-1-113.  (ECF No.

899).  Those orders are incorporated by reference herein.

Relevant to the pending motion, on November 21, 2012, Plaintiffs submitted their

proposed Bill of Costs (ECF No. 843), seeking $649,907.49.  After holding a cost

hearing, the Clerk of the Court awarded Plaintiffs $38,439.78 in taxable costs pursuant

to 28 U.S.C. § 1920.  The Clerk of the Court's award did not allow costs pursuant to

Colo. Rev. Stat. § 6-1-113.[2]  Plaintiffs challenge that determination in the pending

motion.  In response, Defendants argue that Plaintiffs may only recover the limited costs

enumerated in 28 U.S.C. § 1920.  Alternatively, Defendants challenge specific itemized

costs, suggesting that these costs are both unreasonable or unnecessary and incurred

solely for the convenience of counsel.

II.    STANDARD OF REVIEW

As a threshold matter, I must determine the appropriate legal standard for

evaluating Plaintiffs' Bill of Costs.  Here, if the recovery of costs is governed solely by

Fed. R. Civ. P. 54(d) and 28 U.S.C. § 1920, many of Plaintiffs' claimed costs cannot be

---

[1] A detailed recitation of the background of this case is set forth in the Order granting Defendants' motion to alter or amend the judgment and is incorporated by reference herein.

[2] On August 8, 2013, I denied Plaintiffs' first motion for costs without prejudice and instructed Plaintiffs to re-file a renewed motion for costs, taking into account the Clerk of the Court's January 29, 2013 award.

recovered.  However, should Colo. Rev. Stat. § 6-1-113 apply, Plaintiffs' requested costs may, in large part, be recoverable.

Fed. R. Civ. P. 54(d)(1) provides that "[u]less a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party."  Recoverable costs under Rule 54(d)(1) are limited to the expenses enumerated in 28 U.S.C. § 1920, and include fees for transcripts necessarily obtained for use in the case, fees and disbursements for printing and witnesses, and fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case.  *See Sorbo v. United Parcel Service*, 432 F.3d 1169, 1179 (10th Cir. 2005); *see Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441-42 (1987).  Although Rule 54(d) creates a presumption that costs should be awarded to the prevailing party, the taxing of costs is within the sound discretion of the trial court.  *See Allison v. Bank One-Denver*, 289 F.3d 1223, 1248 (10th Cir. 2002).

Here, Plaintiffs seek additional costs not allowable under Rule 54(d) pursuant to Colo. Rev. Stat. § 6-1-113.  The Colorado CCPA statute at issue here provides that

> (2) Except in a class action or a case brought for a violation of section 6-1-709, any person who, in a private civil action, is found to have engaged in ... any deceptive trade practice listed in this article shall be liable in an amount equal to the sum of:
> ...
> (b) In the case of any successful action to enforce said liability, the costs of the action together with reasonable attorney fees as determined by the court.

Colo. Rev. Stat. § 6-1-113(2)(b).  In this case, the jury concluded that the Defendants engaged in a deceptive trade practice, as defined by the CCPA, that caused actual

damages or losses to Plaintiff Wayne Watson.  Consistent with my prior order awarding attorney fees, I find that the CCPA provides for an award of costs to a prevailing plaintiff who proves that a defendant engaged in a deceptive trade practice as defined by the Act.  *See Garcia v. Wal-Mart Stores, Inc.,* 209 F.3d 1170, 1176 (10th Cir. 2000) (holding that to the extent that a Colorado statute authorizes the award of actual costs other than those costs authorized by a federal statute or rule, those costs are not barred by Fed. R. Civ. P. 54(d)(1)); s*ee Infant Swimming Research, Inc. v. Faegre & Benson, LLP*, 2008 WL 5044501, at * 4 (D. Colo. Nov. 20, 2008) (holding that state statutes regarding the award of costs to successful litigants control in diversity actions).

The CCPA does not include its own definition of costs, however, Colorado courts have held that items such as: (1) costs for transcripts necessarily obtained for use in the case; (2) photocopy costs; (3) deposition costs; (4) mileage; (5) expert witness fees; and (6) computerized research expenses constitute costs under the general costs statute.  *See* Colo. Rev. Stat. § 13-16-122.  However, in awarding costs to Plaintiffs, I use my discretion to determine whether they are reasonable and necessary.  *Id.*

III.  ANALYSIS

A.  Expert Witness Fees

Plaintiffs seek $269,909.34 in expert witness fees.  Plaintiffs itemize their expert witness fees as follows: Allen Parmet $13,360.00; Kathie Allison $4,671.43; James M. Gracey of the Colorado Institute for Injury Rehabilitation $15,143.41; Dr. Cecile Rose and Dr. John Martyny of National Jewish Medical & Research Center $12,000; Pat McKenna of Occupational Therapist & Feasibility $3,225; Dr. John Ward of John Ward Economics $11,368.80; Candace Su-Jung Tsai, $3,416.67; Colin Soskolne of the

University of Alberta $17,795; E. Neil Schachter $14,339.39; Never Again Consulting $112,848; Dr. Egilman $40,269.70; and various other expert witnesses in the amount of $21,471.94.  (Pls' Mot. at 6).

First, Defendants object to fees attributable to jury consultant Mr. Kich in the amount of $13,345.27 (ECF No. 845-9).[3]  I agree with Defendants' objection.  Mr. Kich's billing statement includes general descriptions for tasks billed from July 10 to September 7, 2012, including examples such as "Voir dire drafting," "Attorney Tel call - SH," and "In-Court Jury Selection."  (ECF No. 844-5).  I find that these entries fail to set forth the particular services provided by Mr. Kich.  Mr. Kich never testified at any hearing nor the trial, thus, I am unable to determine from this billing statement whether tasks performed by Mr. Kich were reasonable and necessary.  Moreover, as set forth in my order awarding attorney fees, Plaintiffs sought fees for numerous attorneys who worked on this case, and it is unclear whether Mr. Kich simply duplicated the work of Plaintiffs' counsel.  Accordingly, I reduce Plaintiffs' costs request by $13,345.27, the amount of fees attributable to Mr. Kich.

Second, Defendants challenge fees in the amount of $29,134.39 attributable to Drs. Schachter and Soskolne for attending the *Daubert* hearing before District Judge Walker D. Miller on June 14-15, 2011.  (ECF No. 845-9).  In support, Defendants assert that both Schachter and Soskolne submitted duplicative reports, testified to the same opinions as Drs. Egilman and Parmet at the *Daubert* hearing, and did not testify at trial. I disagree with Defendants for two reasons.  First, in his lengthy written order denying

---

[3]   Plaintiffs' Bill of Costs includes entries for Mr. Kich's retainer for trial in the amount of $1750 and consulting/voir dire in the amount of $11,595.27.

Defendants' motion for summary judgment and motions to exclude expert testimony,

Judge Miller admitted evidence and considered testimony from both Drs. Schachter and

Soskolne at the June 2011 *Daubert* hearing.  Judge Miller noted that

> Dr. Soskolne was proffered as an expert in epidemiology and
> testified that he had reviewed Dr. Egilman's report for the
> purpose of evaluating the reliability of the methods used.  He
> testified that it is entirely appropriate to extrapolate disease
> causation from the occupational setting to other contexts, as
> Dr. Egilman did here.  Dr. Soskolne also testified that Dr.
> Egilman's methods for arriving at his opinion, including his
> use of the Hill factors and a differential diagnosis, were
> accepted in the field and were applied validly.  He noted that
> Dr. Egilman's source data was provided and that the
> methods were reproducible, which are the standards that Dr.
> Soskolne would apply in reviewing an article for publication.

(ECF No. 652 at 29).  As to Dr. Schachter, Judge Miller found that

> Dr. Schachter was offered by Plaintiffs as an expert in
> pulmonary medicine.  He also had reviewed Dr. Egilman's
> report and was prepared to testify regarding the
> reliability of the methodology used by Dr. Egilman.  Dr.
> Schachter also opined that it is an appropriate scientific
> practice to extend theories of causation from occupational
> disease to the same disease occurring [in] other settings.
> He also explained why it is considered acceptable in [the]
> medical field to make a causal inference even without
> knowledge of an exact dose or dose threshold of a particular
> disease-causing agent.  Dr. Schachter testified that Dr.
> Egilman applied the Hill criteria appropriately and
> properly performed a differential diagnosis in determining the
> cause of Mr. Watson's disease.

(ECF No. 652 at 29-30).  Judge Miller clearly considered the expert opinions of both

Drs. Schachter and Soskolne and found them credible in denying Defendants' *Daubert*

challenges.  Second, while Defendants make a broad assertion that Schachter and

Soskolne submitted duplicative reports and opinions as other Plaintiffs' expert

witnesses, they fail to point me to any specific examples other than to refer me to

Schachter's and Soskolne's expert reports as a whole.  As the parties are very well aware, this case involves a voluminous record and spans more than five years of active litigation.  I will not cull through hundreds of pages of expert reports and testimony to determine whether there is some duplication of expert opinions.  Thus, based on Judge Miller's order, my review of the evidence admitted at trial, and the billing statements, I find that the fees attributable to Drs. Schachter and Soskolne are both reasonable and necessary.

Third, Defendants object to fees for work not specific to the instant case and other unnecessary costs.  (Defs' Resp at 9-10).  Specifically, Defendants challenge fees associated with Plaintiffs' various expert witnesses arguing that the fees were incurred working on other cases involving bronchiolitis obliterans allegedly caused by the consumption of the chemical diacetyl.  Here, the issues involving the cause of Mr. Watson's injury were vigorously disputed and both parties employed numerous expert witnesses to testify at trial.  The expert witnesses gave opinions as they related to the particular facts of this case.  I cannot say that expert opinions given in an unrelated case in another district involving different parties and facts were duplicative to the opinions rendered in this matter.  Accordingly, I find the contested expert witness fees to be both reasonable and necessary under the particular circumstances of this case.

B.    Expert Witness Travel Expenses

Plaintiffs seek $10,248.10 in expert witness travel expenses.  Consistent with my findings in the previous section, I exclude travel expenses for Mr. Kich in the amount of $963.20.  (ECF No. 845-9, p. 37).  On the other hand, because I find the remaining expert witness fees to be reasonable and necessary coupled with the fact that the

various experts were located throughout the United States, I also find the expert witnesses' travel expenses to be reasonable and necessary.  *See Valentine v. Mountain States Mut. Cas. Co.*, 252 P.3d 1182, 1189 (Colo. App. 2011) (holding that a district court has the discretion to award expert witness travel expenses).  Accordingly, I reduce Plaintiff's costs request by $963.20, the travel expenses attributable to Mr. Kich.

C.    Attorney Travel Expenses

Plaintiffs request $197,970.49 in attorney travel expenses in this case, including air fare, rental cars, meals and hotels.  Defendants raise various objections to these costs arguing that an excessive number of attorneys attended the trial and pretrial hearings.  I agree.  Consistent with my finding that Plaintiffs' attorney fee request should be reduced due to unreasonable duplication and redundant charges, I find that Plaintiffs' Bill of Costs regarding attorney travel expenses should likewise be reduced.  (ECF No. 899 at 7-9) (detailing that the number of attorneys attending the same hearings and the trial is a concern and reducing the number of requested attorney hours of 6,161 to 3,000).  Therefore, in accordance with my reduction of billed attorney hours, I reduce Plaintiffs' request for attorney travel expenses to $97,970.49, finding that amount to be reasonable and necessary.[4]

D.    Computer Research

Plaintiffs seek $23,482.40 in computerized research fees.  To recover

---

[4] Included in my reduction for excessive and redundant travel expenses are requested costs for travel for Lauren McClain (Attorney Kenneth McClain's daughter), Ghada Anis (Wayne Watson's escort to Kansas City for an appointment with Dr. Parmet), Bill Seaton (rental truck driver), and rental truck costs, which I find to be unreasonable and unnecessary.  (ECF No. 845-9).

computerized legal research costs, a party must show that: 1) the client was billed for the research costs separately from attorney fees; 2) the research was necessary for trial preparation; and 3) the research costs are reasonable.  *See Roget v. Grand Pontiac, Inc.*, 5 P.3d 341, 349 (Colo. App.1999).  Here, I find Plaintiffs satisfied these requirements.  Plaintiffs submitted invoices for computerized legal research and a supporting affidavit totaling $23,482.40, all of which have been itemized separately from attorney fees.  (ECF Nos. 827-1, 829-2 and 844-1).  Based on the fact that many contested legal issues were raised and argued throughout the course of this case, I find that these computerized research expenses were reasonably incurred.

      E.    <u>Other Costs</u>

Plaintiffs request additional costs for office supplies, conference services, courier services, document shredding services and the conversion of a video deposition to include text in the amount of $13,759.48.  In support of this request, Plaintiffs have submitted general billing invoices from numerous vendors with little to no description as to the nature of the services rendered.  For example, there are many bills for conference calls listing names for multiple people who might have been involved in this case at some point but are otherwise unfamiliar to the Court.  While these costs may have been reasonable and necessary in litigating this case, the lack of information or description as to what particular services/tasks were being performed and how they relate to this case is either completely omitted or unclear.  Thus, based on my review of Plaintiffs submissions, I cannot discern whether these costs were reasonable or necessary.

(ECF Nos. 844 and 845).[5]  Accordingly, I reduce Plaintiffs' costs request by $13,759.48, the amount of requested fees attributable to "Other Costs" in Plaintiffs' motion.  (ECF No. 897 at 9).

F.      Additional Costs Recoverable by Plaintiffs Under 28 U.S.C. § 1920

While the Clerk of the Court awarded Plaintiffs $29,133.61 in costs pursuant to 28 U.S.C. § 1920, Plaintiffs believe this award is insufficient in several categories, namely fees of the court reporter and costs incident to the taking of depositions.

1.      Fees of the Court Reporter for All of Part of the Transcripts

In the original Bill of Costs, Plaintiffs requested $14,345.89 in fees from the court reporter for transcripts of pre-trial hearings.  The Clerk of the Court awarded none of these fees, explaining that these "are items incurred for convenience of counsel." (Clerk's handwritten notes on Bill of Costs, p. 7 of 86, ECF No. 865).  Plaintiffs believe this award is in error, arguing that these transcripts were necessarily obtained for use in the case.

As previously noted, § 1920 provides that a judge or clerk may tax as costs the following expenses:

> (1) Fees of the clerk and marshal;
> (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;

---

[5] Again, without specific citations from Plaintiffs, I will not conduct an independent review of the massive record in this case in the unlikely event that I will stumble upon a document that may provide support for Plaintiffs' request for these costs.

> (6) Compensation of court appointed experts, compensation
> of interpreters, and salaries, fees, expenses, and costs of
> special interpretation services under section 1828 of this
> title.

28 U.S.C. § 1920.  The Court has no discretion to award costs which are not specifically set forth in § 1920.  *See Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441-42 (1987).  However, to award the cost of a transcript, I must exercise my discretion in determining whether a transcript was necessarily obtained for use in the case.  *See U.S. Indus., Inc. v. Touche Ross & Co.*, 854 F.2d 1223, 1248 (10th Cir. 1988), overruled on other grounds as recognized by *Anixter v. Home–Stake Prod. Co.*, 77 F.3d 1215, 1231 (10th Cir. 1996).  This does not include transcripts largely procured for the convenience of counsel.  *See id.*; *U.S. Indus,* 854 F.2d at 1245.

Here, Plaintiffs submit numerous invoices for pre-trial transcripts without any explanation as to why the transcripts were prepared.  Thus, I have insufficient information and cannot consider whether they were necessary to counsel's performance and not merely for counsel's convenience.  Accordingly, I find that the Clerk of the Court appropriately excluded these requested costs.

> 2.   Costs Incident to the Taking of Depositions

In the original Bill of Costs, Plaintiffs requested $36,641.76 in fees for the taking of depositions.  The Clerk of the Court awarded $29,133.61, stating that "[t]hese costs are awarded per the criteria set forth in *Karsian v. Inter-Financial Group, Inc.*"  (Clerk's handwritten notes on Bill of Costs, Pls' Ex. A, ECF No. 865).  Pursuant to *Karsian*, § 1920 provides for the taxation of costs of depositions necessarily obtained for use in the case.  *Karsian v. Inter-Financial Group, Inc.*, 13 F. Supp. 2d 1085, 1088 (D. Colo.

1998).  I adopted the following test in *Karsian* to determine which deposition costs are

taxable:

> (1) costs for depositions taken solely for discovery purposes
> or for counsel's convenience are not taxable; (2) costs of
> both the stenographic transcription and the videotaping of
> the deposition of individuals who later testified at trial are
> taxable; (3) costs for depositions cited in summary judgment
> briefs are taxable; (4) costs of depositions where depositions
> excerpts were exchanged for use at trial are taxable; (5) for
> categories 3 and 4 above, only the cost of the stenographic
> transcript is taxable, unless the witness also testified at trial;
> (6) costs for depositions of individuals who did not testify at
> trial or appear on the parties' pretrial order and one of the
> parties' final witness lists are not taxable, unless these
> depositions fall into category 3 or 4 above; and (7) costs of
> the stenographic transcripts of individuals who did not testify
> at trial but whose names appeared on the pretrial order as
> well as one of the parties' final witness list are taxable.

*Id.* at 1088.  Plaintiffs argue that I should abandon the *Karsian* test and follow an

approach set forth by a former district judge in another case, *Saiz v. Charter Oak Fire

Ins. Co.*, 2008  WL 2999558, at *3 (D. Colo. Aug. 1, 2008).  I reject this argument as

*Saiz* is not binding on this Court, and Plaintiffs provide no controlling authority in support

of their position.  Thus, based on my careful review, I find the Clerk of the Court properly

used the *Karsian* test in determining that $29,133.61 should be taxed for Plaintiffs'

deposition costs.

IV.    PREJUDGMENT INTEREST

In addition to the request for additional costs set forth in the pending motion,

Plaintiffs also ask that I amend the Final Judgment to include an award of prejudgment

interest at the Colorado rate of 9% per annum.  Without citing to any rule, Plaintiffs

labeled this portion of the motion as one for "Adjustment of Prejudgment Interest Rate in

Final Judgment." (ECF No. 897).  However, a party must make a motion to amend a judgment pursuant to Fed. R. Civ. P. 59(e) no later than 28 days after the entry of judgment.  The Final Judgment was entered on September 26, 2012.  On October 19, 2012, Plaintiffs timely filed their first Rule 59(e) motion, which failed to raise the issue of prejudgment interest.  (ECF No. 817).  Thus, Plaintiffs' pending motion to adjust prejudgment interest, filed August 27, 2013, is clearly untimely under Rule 59(e).

I next turn to Fed. R. Civ. P. 60(a) and likewise find it inapplicable to the pending motion.  While Rule 60(a) provides that a court can clarify any "mistake arising from oversight or omission" at any time, the Tenth Circuit has held that a "Rule 60(a) motion may not be used to alter the rate of prejudgment interest because that would call into question the substantive correctness of the judgment rather than remedy a clerical error or omission."  *McNickle v. Bankers Life & Cas. Co.*, 888 F.2d 678, 682 (10th Cir. 1989); *see Registry Systems Int'l, Ltd. v. Hamm*, 2012 WL 4476630, at *3 (D. Colo. Sep. 28, 2012) (holding that when a final judgment does not mention prejudgment interest, Rule 60(a) is improper).  Here, both the Final Judgment (ECF No. 812) and the Amended Final Judgment (ECF No. 900) awarded post-judgment interest to Plaintiffs, but were otherwise silent as to prejudgment interest.  Thus, I find that Rule 60(a) does not apply to Plaintiff's pending request.

Finally, I note that a Fed. R. Civ. P. 60(b)(1) motion for relief from judgment due to mistake, inadvertence or excusable neglect is timely within one year of the entry of judgment.  Although Plaintiffs do not make their position explicit, they seem to contend that the September 26, 2012 Final Judgment failed to include an award of prejudgment interest through some inadvertence or mistake.  Thus, I will construe Plaintiffs' motion

as one pursuant to Rule 60(b)(1) and (6), and it is timely.

Rule 60(b) provides in pertinent part: that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; ... or (6) any other reason that justifies relief.  I agree with Plaintiffs that prejudgment interest is appropriate under the law and should be awarded in this case for several reasons.

First, as a federal court sitting in diversity, I apply state law, not federal law, to the issue of prejudgment interest. *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1156 (10th Cir. 2000).  Under Colorado law, an award of prejudgment interest is mandatory in personal injury cases such as this matter.  Colo. Rev. Stat. § 13-21-101; *James v. Coors Brewing Co.*, 73 F. Supp. 2d 1250, 1257 (D. Colo. 1999). Further, prejudgment interest is an element of compensatory damages.  "Courts have long characterized prejudgment interest as an element of [plaintiff's] complete compensation." *Johnson v. Continental Airlines Corp.*, 964 F.2d 1059, 1062 (10th Cir. 1992) (internal quotations and citations omitted).  "Prejudgment interest is normally designed to make the plaintiff whole and is part of the actual damages sought to be recovered." *Id.*

Second, in the initial complaint and in every amended complaint thereafter,[6] Plaintiffs sought appropriate damages, interest, costs and attorney fees. *See Colorado Performance Corp. v. Mariposa Associates*, 754 P.2d 401 (Colo. App. 1987) (holding

---

[6] The final amended complaint is the Fourth Amended Complaint (ECF No. 548).

-14-

that plaintiff's request for interest in his complaint was sufficient to permit an award of

prejudgment interest).  Further, I find that Plaintiffs' counsel inadvertently failed to

include this request in its initial Rule 59(e) motion.  Thus, I find that the circumstances

are such that I can and should provide the relief Plaintiffs seek under Rule 60(b)(1) and

(6) to include prejudgment interest.  Accordingly, in light of the fact that Colorado law

determines prejudgment interest in this diversity case, I find that Plaintiffs are entitled to

prejudgment interest at a rate of 9% per annum.  Colo. Rev. Stat. § 13-21-101(1).

V.    CONCLUSION

Based on the foregoing, it is

ORDERED that Plaintiffs' Renewed Motion for Costs and Correction of Pre-

Judgment Interest Rate (ECF No. 896) is **GRANTED** to the extent that pursuant to Colo.

Rev. Stat. § 6-1-113(2)(b), costs are taxed in the amount of **$387,189.33** against the

Defendants.  This amount is calculated as follows:

Requested amount:   $515,257.28

Reduced by:          $ 13,345.27   (costs attributable to Mr. Kich's fees)
                     $    963.20   (costs attributable to Mr. Kich's travel)
                     $100,000.00   (disallowed costs for attorney travel expenses)
                     $ 13,759.48   (disallowed "other costs")
                     $128,067.95

Total costs awarded: **$387,189.33**

The motion is also **GRANTED** to the extent that Plaintiffs are entitled to

prejudgment interest at a rate of 9% per annum.  The motion is **DENIED** in all other

respects.  It is

FURTHER ORDERED that Defendant Dillon Companies' Unopposed Motion to

Amend Amended Final Judgment Pursuant to Fed. R. Civ. P. 60(a) (ECF No. 909) is

**GRANTED**.  In the Final Judgment (ECF No. 812), the Clerk of the Court transcribed

the jury verdict properly with its answer to paragraph 8 as "No."  On the contrary, the

Amended Final Judgment (ECF No. 900) transcribed an answer of "Yes" for the same

paragraph 8.  The Clerk of the Court shall amend the Final Judgment to correct the

answer to paragraph 8 as "No" for Plaintiffs' claim of strict liability against Defendant

The Kroger Co. as originally provided in the jury verdict.  It is

FURTHER ORDERED that the Clerk of the Court shall amend the Final

Judgment consistent with this Order.

Dated:  November 13, 2013

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Senior United States District Judge